WESTERN MILITARY ACADEMY, RESPONDENT, v. SALVATORE VIVIANO, APPELLANT.—133 S. W. (2d) 1098.

St. Louis Court of Appeals. Opinion filed Dec. 5, 1939.

302

*Strauss & Abrams* and *Harold J. Abrams* for appellant.

*Barker, Durham & Drury* and *George O. Durham* for respondent.

McCULLEN, J.—This suit was originally brought by respondent, as plaintiff, before a justice of the peace of the City of St. Louis, Missouri, against appellant, as defendant, upon the following statement: "For tuition and supplies of son Frank Viviano, 1929-1930 school year, $485.43." The justice found in favor of plaintiff- in the sum of $454.50, and defendant appealed to the Circuit Court of the City of St. Louis, where a trial before the court, a jury having been waived, resulted in a judgment in favor of plaintiff against defendant for $300, with interest from December 9, 1929, amounting to $126, making a total of $426. From that judgment defendant has duly appealed to this court.

After the appeal from the justice court, plaintiff filed in the circuit court a detailed statement of its account against defendant.. Defendant did not file any answer in the justice court or in the circuit court.

It appears from the record that defendant had two sons, Frank and Ross Viviano; and that he enrolled his son Frank in the plaintiff academy for the school year 1929-1930; that during 1930, a few months before the end of the school term, Frank quit the school, at which time defendant owed plaintiff the sum of $485.43 for Frank's tuition and incidental expenses; that defendant about that time sent his check to plaintiff for the last-mentioned sum, but, upon learning that Frank had quit the school, stopped payment on the check. Thereafter, plaintiff instituted this suit in the justice court.

After the appeal from the justice court and while the case was pending in the circuit court, but before the trial therein, Col. R. L. Jackson, owner and superintendent of the plaintiff academy, discussed with defendant the matter of the then pending suit, as well as a proposal of enrollment in the academy of defendant's son Ross, who had attained school age, and as a result of their discussion they entered into a written agreement. The agreement is in the form of a letter addressed to defendant by plaintiff but is signed by both parties and is as follows:

"Jan. 18, 1933.

"Mr. S. Viviano,
"St. Louis, Mo.
"Dear Sir:

"This note will outline the plan to be followed for deferred payments in the tuition and expenses of Ross Viviano, who is entering our school today.

"The tuition for the remainder of the year will be $450. The incidental expenses will be $50. No fixed charge will be made for uniforms, but all articles will be supplied and charged as needed.

"There is a balance due on the incidental account of Frank Viviano amounting to $85.43. The total indebtedness is therefore now $585.43. Mr. Viviano will pay this account at the rate of $100 a month, by

the 15th of each month, until the account is paid in full.

"The Western Military Academy will assume the court costs of the recent trial, and will credit the $400 judgment on the tuition in full against the tuition of Ross Viviano.

"Yours very truly,

"Western Military Academy,

RLJ :K "By R. L. Jackson,

"S. Viviano."

Contemporaneously with the above agreement, defendant signed an application form enrolling his son Ross in plaintiff academy "for the year commencing January 18, 1933 and ending June 7, 1933," subject to the conditions of the catalogue and regulations of the academy for 1932-1933.

The agreement between plaintiff and defendant of January 18, 1933, and the application form for the enrollment of defendant's son Ross were introduced in evidence as plaintiff's Exhibits No. 5 and No. 6, respectively. It will be noted that the agreement of January 18, 1933, provides that the tuition fee for Ross Viviano for the period mentioned is $450; and also provides that a fixed charge of $50 shall be made for incidental expenses, making a total charge for tuition and incidental expenses of $500.

Defendant contends that the agreement of January 18, 1933, between himself and plaintiff abrogated and nullified the agreement which was made on August 23, 1928, between the same parties, when Frank Viviano was first enrolled; and that, as a consequence, the obligations arising out of the prior contract were annulled, and that plaintiff cannot maintain this action which arises out of the prior contract; that, if any action exists, it would have to be founded upon the new agreement. It is not contended by defendant that he paid any part of the amount for which plaintiff had recovered judgment in the justice court, or that there was any express release thereof given by plaintiff, or that the debt itself was ever satisfied or discharged, his contention being that a novation was effected by the substitution of the new agreement of January 18, 1933, between the parties.

As opposed to defendant's contention, plaintiff asserts that the authorities relied upon by defendant, while correctly declaring principles of law which apply to executory contracts, are not applicable to the case at bar for the reason that the contract for tuition and expenses of Frank Viviano had been completely executed by plaintiff and hence was no longer a contract; that the relationship of the parties had changed to that of debtor and creditor; that the new contract was merely an ordinary accord which was not fully performed by defendant, and therefore did not and could not discharge the old debt or prevent the prosecution of the present suit.

It appears that immediately following the execution of the agreement of January 18, 1933, Ross Viviano entered plaintiff's

academy, whereupon plaintiff opened a new ledged sheet in its books for him. The ledger sheet was introduced in evidence as plaintiff's Exhibit No. 7. The first entry on the debit side of the ledger sheet is dated January 18, 1933, and is for $585.43. At the top of said sheet, following the name and address, appears the following entry: "(Old a/c $485.43) $400 judgment to be credited against tuition of 2nd son. Bal of $85.43 to be pd. by Mr. Viv." Incidental expenses are shown in four small items on the debit side of the ledger sheet, increasing the total debits as of April 30, 1933, to $666.17. On the credit side of said ledger sheet appear three entries representing cash payments made by defendant. These payments were shown by the evidence to be for the following purposes: $100 on January 21, 1933, for the tuition account of defendant's son Ross; March 20, 1933, payment of $167.25, $100 of which was for Ross' tuition and the remaining $67.25 representing two charges for Ross' expenses for January and February of that year; and on May 17, 1933, a payment of $98.92, of which $85.43 was for the son Frank's incidental expenses, and $6.69 and $6.80 for the son Ross' incidental expenses for March and April, respectively.

The same ledger sheet shows a balance due on the account of Ross Viviano in the sum of $300, while the ledger sheet of the account of defendant's son Frank (plaintiff's Exhibit No. 2) shows a balance due in the sum of $485.83, which is the amount for which plaintiff sued defendant in the justice court. It appears that plaintiff voluntarily credited on the old account all payments in excess of the $100 applied to the tuition of Ross Viviano, thereby reducing the old account to $300, which is the sum for which judgment herein was entered, to which was added interest in the sum of $126 as heretofore stated.

The evidence shows that Ross Viviano voluntarily withdrew from the academy in April, 1933, because of illness, and no further payments were made by defendant after the payment of May 16, 1933. In a lengthy letter which accompanied that payment, defendant stated that in his opinion he was entitled to some credit because his son Ross had caught a bad cold, which resulted in his having aches and pains; and that defendant had thereby been put to some expense. Defendant also complained in that letter that the incidental expenses at the academy were out of line in view of the conditions then prevailing. However, defendant did not testify at the trial, and no such contention was made on his behalf. On the contrary, it is frankly stated in defendant's brief in this court that defendant did not at the trial and does not in this court controvert the correctness of the amount of any of the debit or credit figures shown in the evidence, and that he does not rely upon any counterclaim or breach of contract.

Defendant does contend, however, that the refusal of the trial court to give two declarations of law which he offered constituted reversible error. The first declarations of law was to the effect that, upon the pleadings and the evidence, plaintiff was not entitled to recover and the judgment of the court must be in favor of defendant. The second declaration of law was to the effect that, if the court found from the evidence that on January 18, 1933, plaintiff solicited defendant to send his son Ross to its school for a stated tuition charge payable at the rate of $100 per month, and agreed to assume the payment of the costs in this action and credit the $400 sued for in this action against the tuition charged for Ross Viviano, and that said offer was accepted by defendant and defendant did send his son Ross to plaintiff's school and thereafter paid two installments of $100 per month, then the court should find in favor of defendant. We think the court's action in refusing to give said declarations of law was correct.

The agreement of January 18, 1933, shows that the regular tuition and incidental expenses were $500. At that time plaintiff had a judgment against defendant based upon the balance due on the account of Frank Viviano. That account amounted to $485.43. It will thus be seen that the total amount before the parties for consideration then was $985.43. The agreement provided that $400 of the judgment would be credited on the tuition and incidentals for Ross Viviano, thereby reducing the amount of tuition and incidentals for Ross to $100, which would make the total of the two accounts $585.43, as stated specifically in the agreement as follows: "The total indebtedness is therefore now $585.43. Mr. Viviano will pay this account at the rate of $100 a month, by the 15th of each month, until the account is paid in full." A mere reading of the agreement shows that, while defendant did not specifically agree to pay the judgment nor did plaintiff specifically agree to satisfy or discharge the judgment, nevertheless defendant did expressly agree to pay the total amount of the old debt and $100 on the new debt, representing the account of Ross Viviano, making the total of $585.43 as shown in the last quotation above. It is evident from the agreement itself that the promise of plaintiff to credit the $400 judgment on the tuition of Ross Viviano, contained in the last paragraph, is contingent upon performance by defendant of his part of the agreement, contained in the preceding paragraph, wherein he agreed to pay the total indebtedness, stated to be $585.43, at the rate of $100 per month until the account should be paid in full.

The evidence shows without dispute that defendant did not pay in accordance with the agreement, but paid only $285.43 under the agreement. Had defendant completed performance of his part of the agreement, it seems clear that by the payment of $585.43 he would have satisfied and discharged both debts totaling $985.43.

The transaction appears to have been an accord between the parties, but having never been completely performed by defendant, it constituted no bar to plaintiff's original demand. It did operate as an extension of time for payment of the old account, as well as a credit as far as the payment went. The extension of time, however, could not have been for more than six months from January 18, 1933, because the agreement provided that payment was to be made at the rate of $100 per month. The record shows that the time for payment under the agreement had long since expired before this suit was called up by plaintiff for trial in October, 1936.

The general rule with respect to accord and satisfaction is stated in 1 C. J. S., Accord and Satisfaction, Section 36, p. 540, as follows:

"Performance or execution of the contract of accord is necessary to constitute satisfaction and to achieve the legal results of satisfaction except where the new agreement or promise itself, instead of performance thereof, is accepted as satisfaction.

"Satisfaction is necessary to give effect to an accord, to extinguish the original obligation and to bar an action thereon. Ordinarily, an agreement constituting an accord must be executed, performed, or complied with, to have the effect of satisfaction, to be complete and binding as an accord and satisfaction, to discharge the original contract or cause of action, and to constitute a bar or defense to an action on the original claim or demand."

With respect to the sufficiency of the performance of an accord, the general rule is stated in the same authority as follows:

"To be sufficient, execution or performance of an accord must be actual, full, and complete; part performance in insufficient, as is also a mere readiness to perform or even an actual tender of performance." 1 C. J. S., Accord and Satisfaction, Section 37, p. 541.

Our Supreme Court has held that, where the terms of an accord and satisfaction are executory, a partial performance of the terms thereof is not sufficient to constitute such a complete satisfaction as will extinguish the original debt or claim. The court defines an "accord" as an adjustment of a former difference, and defines a "satisfaction" as a performance of the terms of the accord. [Crouch v. Quigley, 258 Mo. 651, 167 S. W. 978.]

In Chapman v. Adams, 204 Mo. App. 659, 219 S. W. 132, the court held that an "accord" is an agreement whereby one party undertakes to give or perform and the other party to accept in satisfaction of a claim something other or different from what he is or considers himself entitled to; and that a "satisfaction" is the execution or carrying into effect of such an agreement. In the Chapman case the holder of a tax bill offered to accept less than was due, but withdrew his offer before any payment or proper tender of payment was made thereon. The court held therein that, if the transaction was a compromise, there was not a sufficient settlement, and if it was an accord,

there was not sufficient satisfaction to make the new agreement a merger of the old demand and to bar all action thereon.

In the case at bar there is nothing in the agreement itself or in the evidence to show an intention on the part of plaintiff to accept the mere promise or agreement of defendant as satisfaction of the debt. In the absence of evidence showing such an intention, the mere making of such an agreement is not available as a defense to an action on the original claim. The general rule is stated as follows:

"Until the contrary is shown it will ordinarily be considered that the parties intended that only performance of the new promise or agreement, and not its mere giving and acceptance, should constitute or effect a satisfaction." 1 C. J. S., Accord and Satisfaction, Section 22, p. 491.

The law of this State is in harmony with the general rules dealing with accord and satisfaction heretofore referred to. In a comparatively recent case, it was said:

"To constitute a valid accord and satisfaction, it is essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. *It is equally essential that the creditor shall have accepted it with the intention that it should operate as a full satisfaction. Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking, there can be no accord and satisfaction.*" [Aldridge v. Shelton's Estate (Mo. App.) 86 S. W. (2d) 395, 399, 400.] (Italics ours.)

On the evidence in the case at bar, the trial court would not have been warranted in holding that the parties intended, by the agreement or accord of January 18, 1933, that plaintiff thereby discharged or that he would discharge the old debt or the judgment mentioned in the agreement without full performance thereof by defendant. The agreement itself does not support such a theory, nor does anything in the rest of the evidence so show.

As to the cases cited by defendant to support his theory of a new contract being substituted for and extinguishing the old contract, it is sufficient to say that they correctly declare the principles of law applicable to the facts in such cases but they are not applicable to the facts in the case at bar.

Full credit was given by plaintiff for all payments on account made by defendant, including credit for $400 on Ross Viviano's tuition, even though defendant did not fully perform his part of the accord.

We are satisfied that the trial judge reached the right conclusion, and the judgment is accordingly affirmed.

*Becker, J.,* concurs; *Hughes, P. J.,* not sitting because not a member of the Court when the case was submitted.