ERASTUS C. COLLINS and THORNTON JENNINGS, Trustee for ERASTUS C. COLLINS, Under Order of the Circuit Court of Henry County, Missouri, Plaintiffs-Respondents, v. I. E. GASKILL and W. W. JOHNSTON, Defendants, I. E. GASKILL, Appellant, No. 40865—221 S. W. (2d) 181.

Division One, April 11, 1949.

Opinion Modified on Court's Own Motion, May 9, 1949.

Motion for Rehearing on Modified Opinion or to Transfer to Banc,

Overruled, June 13, 1949.

*H. E. Sheppard* and *Elmer E. Hall* for appellant.

*Delton Houtchins, Charles A. Calvird, Crouch & Crouch* and *William M. Kimberlin* for respondents.

VAN OSDOL, C.—Action to determine if there was an accord and satisfaction of indebtedness described in a certain "deed in

trust," and for a judgment ordering that the described land be re-conveyed and that a life insurance policy, which had been assigned, be returned to plaintiff Collins; or for alternative relief and for an accounting.

The trial court found there was an accord and satisfaction and ordered defendant-appellant Gaskill to surrender the life insurance policy; and decreed defendant-appellant Gaskill had no interest, and that he be barred from claiming any right, title or interest in the described land.

The case has its origin in the business and affairs of Brinkerhoff-Faris Trust & Savings Company, which have been the source of litigation heretofore appealed to this court. See In re Collins' Trust Estate, 354 Mo. 614, 190 S. W. 2d 259; Winchell v. Gaskill, 354 Mo. 593, 190 S. W. 2d 266; Brinkerhoff-Faris Trust & Savings Co. v. Gaskill, 356 Mo. 61, 201 S. W. 2d 274.

In reading the opinion, In re Collins' Trust Estate, supra, it is observed that Erastus C. Collins, a plaintiff-respondent herein, and his wife were grantors in the "deed in trust" involved in that case, which instrument is also involved in the instant action; that Thornton Jennings, a plaintiff-respondent in the instant case, was appointed successor trustee by the Circuit Court of Henry County; that I. E. Gaskill, defendant-appellant herein, was the purchaser of the remaining assets of the Brinkerhoff-Faris Trust & Savings Company, by which purchase he became entitled to the beneficial interest Company had under the trust instrument; that defendant W. W. Johnston, who died after the institution of the instant action, was the special deputy commissioner of finance in charge of the liquidation of Company's affairs; that Johnston, when in charge of the Company's affairs, took over the duties of trustee and so functioned until February 16, 1939, at which time Gaskill (defendant herein) purchased Company's assets and took over as trustee. And, in the instant case, it is, in effect, admitted Brinkerhoff-Faris Trust & Savings Company, before its liquidation, had acquired the beneficial interest the Bank of LaDue had under the "deed in trust."

Some circumstances of the execution of the "deed in trust" are stated; and the terms of the instrument, including the powers of the trustee, are correctly summarized in the case of In re Collins' Trust Estate, supra (354 Mo. at page 618, 190 S. W. 2d at page 260).

It is to be particularly noted in reading the opinion of In re Collins' Trust Estate, supra, that a $5000 policy on the life of Erastus C. Collins was assigned as security for the indebtedness mentioned in the instrument.

In the instant action it is alleged by plaintiffs that defendant Gaskill, hereinafter referred to as "defendant," received the proceeds (with some deductions) of a loan of $2410, procured by plaintiff Collins, hereinafter referred to as "plaintiff," on the insurance

policy, in satisfaction of the indebtedness scheduled in the trust instrument. It is alleged in defendant's answer the indebtedness as of January 1, 1946, was $10,371. Hence the value in money to plaintiff of the relief sought by him and the loss to defendant by the satisfaction of the indebtedness exceeds $7500. This court has appellate jurisdiction of the case on the ground of "amount in dispute." Section 3, Article V, Constitution of Missouri, 1945. See Higgins v. Smith, 346 Mo. 1044, 144 S. W. 2d 149.

It seems the primary questions presented are—in the circumstances and in view of the relation of the parties, did written correspondence between defendant and plaintiff amount to an accord, and did defendant's receipt and acceptance of the proceeds of the loan procured by plaintiff on the life insurance policy amount to the execution or performance of the accord with consequent discharge of indebtedness secured and extinguishment of defendant's beneficial interest under the trust instrument. In order to grasp the significance of the correspondence it is necessary to extend this opinion by selecting and quoting the letters or parts of letters material to the issues.

While acting as trustee, Johnston, admittedly the agent of defendant, wrote ▬▬ plaintiff, then living in Chino, California, a letter of December 17, 1938, as follows,

"This letter is written you in reference to your note to the Brinkerhoff-Faris Trust & Savings Company with collateral security constituting of life insurance policy dated July 28, 1920, payable to Minnie Collins, and assignment of such policy by Minnie Collins to the Company; also the Trust Company to rent and retain net rentals from the 240 acre farm to apply on your note. . . . As you know, the past six years have been very bad in the agricultural sections, and the collections and expenses have come out about even. The remaining assets of the Company have been sold and the party purchasing the same *is desirous of closing out these matters at the very earliest moment.* We note from the policy that at the end of 18 years, which was July 28, 1938, that the said policy has a cash or loan value of $2230.00. The note and interest would amount to considerably more than this, but if you would desire to cash in the policy or make a loan with the company for the amount of such value, the purchaser . . . *would be willing to accept the same in full settlement of your indebtedness and quit-claim deed back the farm to you and surrender the policy either to you or the company.* . . . If you decide to either cash in the policy or secure a loan, you can notify the company and we will be willing to cooperate with them in connection with any papers necessary in connection therewith." (Our italics.)

Plaintiff did not immediately answer the letter, and January 5, 1939, defendant wrote plaintiff as follows,

"Referring to Mr. Johnston's letter of December 17th with reference to your paper, collateral, etc., among the latter of which is life insurance policy for $5000.00 . . . which policy now has a cash surrender value of $2230.00 or a loan value of that amount. I desire to close out the assets of the Brinkerhoff-Faris Trust & Savings Co. as rapidly as is consistent and had expected that you would give a prompt reply to Mr. Johnston's letter *in which he proposed deeding the farm back to you and cancelling your obligations* for the $2230.00 to be realized from the Life Insurance policy which would be accepted, by a surrender of the policy to the company or from the proceeds of a loan on the policy should you decide to continue to carry the policy. *It appears that it would be to your interests to make the loan* and to that end *I urge that you give the matter your immediate attention* and advise promptly, *as otherwise I shall in the very near future want to surrender the policy for liquidation purposes, because I do not care to carry on the old arrangement.* So please favor us with reply, for which air-mail, stamped envelope is enclosed." (Our italics.)

January 10th plaintiff answered defendant as follows,

"Your letters about the insurance and place received. And I wish to say that *I want to settle things as soon as I can and get the farm in my own name again.* Please fix up the papers and mail to me at Chino." (Our italics.)

But, January 17th, having learned from the insurance company that the loan value of the policy had increased to $2410.00, defendant's agent Johnston wrote to plaintiff as follows,

"We are in receipt of letter from the Insurance Company, enclosing policy loan on the above policy for $2410.00 . . . You and your wife can sign the loan paper on the lines indicated . . . When you have filled in the Policy Loan, then kindly return the same to us and we will forward it together with the policy to the company, and upon receipt of remittance which will be made payable to you and the Brinkerhoff-Faris Trust & Savings Company, the check will be forwarded to you for endorsement. When same has been endorsed by you and returned to us, *then we will have proper release made of the deed of trust on the farm* and also pay all taxes up to date *and send to you in full settlement of the agreement* made between you and the Brinkerhoff-Faris Trust & Savings Company. . . ." (Our italics.)

On January 27th plaintiff, by one Charles Meeks, wrote Johnston, precisely as follows,

"Mr. Collins is haveing me write this letter. he wants to come back and he says he will sign the papers for one hundred dolls [184] ($100.00) for traveling expenses. he has not a cent in the world for anything. he has been seperated and divorce from his wife for five year and is living on the county at the present time and says he will wait for an answer before signing insurance papers."

February 2d defendant replied as follows,

"Replying to your letter of January 27th advising that your wife has been divorced for some five years and you are very anxious to return here for which purpose you will need $100.00 *out of the arrangements* for the loan on your policy, I have further reviewed the matter to the conclusion that *I think it will be much better for you in your condition and need for some immediate funds to continue the present arrangement* and under which I shall be willing for you to make the loan on the policy with the understanding that $2000.00 of the proceeds will be *applied on your indebtedness* and out of the balance I will reserve and hold $93.60 to cover the next semi-annual premium representing a balance of about $150.00 for you. If this arrangement is satisfactory please sign the papers for the Loan Agreement recently sent you, and be sure that you sign them as instructed. . . . Since receiving your letter I have communicated with the insurance company with reference to your wife being divorced and have secured from the company an Order for you to sign changing the beneficiary . . . . Please sign the order for change of beneficiary . . . . The check in this reference will be made payable to the Brinkerhoff-Faris Trust & Savings Company and you, along with my check payable to you for the difference in the amount of the check and the note premium above mentioned which will be in the approximate amount of $150.00, and the check will be mailed to the Bank of America . . . with instructions that when you endorse the insurance check that my check will be delivered to you. . . . If you will give this matter your very prompt attention it will not be more than a week or so before you can have this matter completed, and in order to hurry this along we are forwarding this by air-mail and enclosing an air-mail stamped envelope addressed to the insurance company for the mailing by you of the loan agreement papers . . ." (Our italics.)

The consummation of the loan from the insurance company was delayed and several other letters necessarily written in order to designate a new insurance beneficiary.

And on February 15th, defendant wrote plaintiff as follows,

"The Central Life Insurance Company advises that you sent the loan agreement as per our instructions, but that you designated Mr. Chas. E. Meeks as beneficiary . . ., and further advising us that they sent you a new blank suggesting that if you did not want to name some relative as beneficiary that you should make your Estate the beneficiary. . . . If you have not already executed the blank for change of beneficiary and returned to the insurance company, *please attend to the matter at once, as this matter has been dragging along for several weeks, and unless the arrangements can be completed for the loan without further delay, I feel that the matter might as well be dropped. If, however, you will complete the arrangements*

*as per our instructions in letter of February 2, 1939, we will still close the matter* and pay you $150.00 to be deducted from the proceeds . . . ." (Our italics.)

March 2d defendant, now having assumed to act as trustee, wrote plaintiff as follows,

"The Central Life Insurance Company has advised me of the receipt from you of the designation of Bertha Thurman as beneficiary in your policy . . . The Company has also supplied us with a new policy loan in the amount of $2,410.00 for your signature and witness to same, and the signature of the beneficiary. You will please sign on the line for insured . . . . Kindly mail me at once the loan agreement . . . and upon receipt of same we will . . . forward to the Insurance Company for the check, and upon receipt of the check the same will be sent to your local bank along with remittance for the amount coming to you *under the arrangements* and to be delivered to you upon the endorsement on the insurance company check for the proceeds of the loan. *Please attend to* ▮ *this matter immediately* and promptly mail . . . ." (Our italics.)

And again, on March 11th, as follows,

"We have received the loan agreement executed by you . . . and mailed to the Central Life Insurance Company . . . there might be a slight difference in the net amount of $2000 originally anticipated *for endorsement on your paper*, but the amount will probably be less than $1.00, and consequently we are handling in this way to save further delay in closing the matter. The insurance company advised us on January 14th that after deducting the semi-annual premium of $93.60 due January 28th from the amount of the loan and the interest to the next premium paying date there would be in the neighborhood of $2244.00 left, and then as I instructed you $2000 of the proceeds *will be credited on your paper* and we would reserve $93.60 for the January 28th, 1939 semi-annual payment. We trust this will all be entirely agreeable and acceptable to you, and with the closing of this your anticipated trip to this country will be in the very near future when we will be pleased to meet you." (Our italics.)

▮ Although plaintiff, after he had forwarded the executed loan agreement to defendant, had written defendant, March 5th, as follows,

"I have been waiting to hear from you *on that business you and I were trying to settle up*—I am getting tired waiting please let me know what you are doing. If you all have quit or not let me know and I'll see what I can do. *Mr. Johnston said that things would be all O.K.* so come on." (Our italics.)

We agree with the trial court that the letter of March 5th was admissible into evidence. It was a part of the correspondence of the parties prior to defendant's receipt and acceptance of the proceeds of the loan procured by plaintiff on the life insurance policy.

Sometime thereafter, in late March 1939, the loan of $2410 was consummated.

Plaintiff testified he had been seriously injured in September 1938. He did not keep a copy of any of the letters quoted supra. He was "in pretty bad shape." He "was in bed." He had received the letters of December 17th and January 5th, and also the letter of January 17th.

It is the general rule that payment of a part of a debt, or of liquidated damages, is not a satisfaction of the whole debt even when the creditor receives the part for the whole, and receipts for the whole demand. But this rule has no application in those cases in which a new consideration enters into the stipulation for the release of the whole debt by paying a portion only as, for instance, if the payment of a part be more beneficial in any way to the creditor than that prescribed by the contract. Pollman & Bros. Coal & Sprinkling Co. v. St. Louis, 145 Mo. 651, 47 S. W. 563; Riley v. Kershaw, 52 Mo. 224. The terms of the "deed in trust" did not provide plaintiff should negotiate a loan upon his insurance policy and apply the proceeds on the indebtedness scheduled in the instrument. Even if the indebtedness were considered liquidated, we believe plaintiff's performance of the accord by the negotiation of the loan from the insurance company and the payment of the proceeds to defendant would permit an exception to the general rule. There would be such benefit to defendant by the payment as to provide a new consideration (the plaintiff's payment would be in execution of an undertaking new and collateral to the original obligation) for the satisfaction of the entire, even though liquidated, indebtedness. Pollman & Bros. Coal & Sprinkling Co. v. St. Louis, supra; Riley v. Kershaw, supra; Vol. 1, Am. Jur., Accord and Satisfaction, § 39, pp. 236-239; and note 119 A. L. R., at pages 1125-1126. See also Two Theories of Consideration, Professor James Barr Ames, Vol. XII Harvard Law Review 515, at page 524 et seq.

It is conceded by defendant-appellant in his pleadings and brief that, when plaintiff by his letter of January 10th replied to the letters of dates December 17th and January 5th, in which letters it was proposed the indebtedness was to be satisfied and plaintiff's land reconveyed, defendant's proposal was accepted and there was an accord; but it is defendant-appellant's contention that the accord was not executed or performed prior to the subsequent correspondence beginning with plaintiff's letter (per Meeks) of January 27th; that plaintiff by the letter of January 27th submitted a "counter proposal" which was not accepted by defendant; and that the subsequent correspondence between the parties evidences a meeting of the minds whereby the original contract of accord was abandoned and it was agreed the proceeds of the loan from the insurance company were to be applied upon the indebtedness. On the other hand, it is contended by plaintiff-respondent there was an accord between the

180

parties as of January 10th and there was never thereafter a common intention the original agreement should be abandoned; that defendant was paid and actually received more cash than he had agreed to receive in satisfaction of the indebtedness by the original accord; and that, when the monies were received by defendant, there was a performance of the original accord effecting an accord and satisfaction.

It should be conceded, as argued by defendant, the accord contemplated the indebtedness was to be satisfied upon execution or performance by plaintiff in the procuring, and the paying over of the proceeds of the $2230 loan to defendant. It should also be conceded that, since the new agreement or accord itself was not intended to be accepted in satisfaction of the indebtedness, the unperformed ·or unexecuted accord would not bar an action on the original indebtedness. Crouch v. Quigley, 258 Mo. 651, 167 S. W. 978; Peterson v. Wheeler, 45 Mo. 369; Chapman v. Adams, 204 Mo. App. 659, 219 S. W. 132; Tillotson v. Independent Breweries Co., Mo. App., 236 S. W. 906; Elliott v. Thomas, 185 Mo. App. 27, 171 S. .W. 939; Western Military Academy v. Viviano, 235 Mo. App. 301, 133 S. W. 2d 1098. And compare Priest v. Oehler, 328· Mo. 590, 41 S. W. 2d 783. But see Section 417(a), Vol. II, Restatement of the Law of Contracts, pp. 785-787.

Now, examining the quoted letters written· by plaintiff, it seems defendant should have known plaintiff believed and understood the proceeds of his loan from the insurance company were being paid over in settlement of his indebtedness, and that he would receive a reconveyance of his land in accordance with the original accord except as the terms of accord were being modified because of the greater loan value of the policy than was known to exist when the accord was entered into. It is true the letters of defendant after that written by Johnston of January 17th disclosed defendant was no longer proposing the proceeds of the loan were to be received by him in settlement or satisfaction of the indebtedness, but was communicating to plaintiff the proposal and defendant's intention that the proceeds of the loan were to be "applied on your indebtedness (letter defendant to plaintiff, February 2d)"; and "for endorsement on your paper . . . will be credited on your paper (letter defendant to plaintiff, March 11th)." However, in plaintiff's letter so late as March 5th, plaintiff said, "I have been waiting to hear from you *on that business you and I were trying to settle up* . . . *Mr. Johnston said that things would be all O. K."*

It is important to notice the only letters tendered or introduced into evidence which were written by Johnston were the letters of December 17th and January 17th, in which were used the language, "full settlement of your indebtedness" and "quit-claim deed back the farm to you," and "will have proper release made of the deed of trust on

the farm . . . and send to you in full settlement of the agreement.'' And we do not forget defendant, although beneficiary under the ''deed in trust,'' an interest not in alignment with plaintiff's, was also assuming to act as trustee and, in so acting, was the agent of and stood in a fiduciary relation to plaintiff, the debtor and real (equitable) owner of the property which had been conveyed or assigned by the trust instrument as security for the scheduled indebtedness. Stine v. Wilkson, 10 Mo. 75; Green Real Estate Co. v. St. Louis Mut. House Bldg. Co. No. 3, 196 Mo. 358, 93 S. W. 1111; Vol. 36, Am. Jur., Mortgages, § 18, p. 700. See generally relation of trustee to debtor in cases collated, 117 A. L. R. 1054, at pages 1055-1064.

Now, the evidence shows defendant did actually receive and accept from the proceeds of the loan of $2410 from the insurance company a net amount in excess of the net amount he would have received had the loan value of the policy been $2230 (see renewed proposal in letter of January 5th) although plaintiff did receive $150 from the proceeds of the loan of $2410.

The plaintiff's letters indicated he was indigent and not physically well, and it is apparent he and his agent, Meeks, were not astute or schooled in the terms used in the transaction of business matters; and defendant and his agent were men (it is inferred) experienced in business affairs and conversant with the terminology used in the handling of loans. A mere casual reading of the quoted letters (particularly that of plaintiff to defendant, dated March 5th) should have been sufficient to have signaled defendant that plaintiff had become confused or did not comprehend the import of three clauses obscurely written in defendant's verbose, detailed and urgent correspondence; and that plaintiff was (when he forwarded the executed loan agreement to defendant) intending and expecting a satisfaction of his indebtedness and a reconveyance of his land. In this court of equity defendant should be held to have been advised of that which he should have known had he, with scrupulous care, fully and forthrightly exercised the duties he, a trustee, owed to plaintiff. Unless he assented, it seems, his acceptance of the proceeds intended, in effect tendered, by plaintiff as a satisfaction would be wrongful. He, a trustee, should not be permitted to assert his acceptance was for a purpose other than that which he, a trustee, should have known was intended by plaintiff. The situation, we believe, is analogous to the situations where an obligation is unliquidated or disputed and the creditor accepts the performance which the debtor has tendered in satisfaction of the pre-existing obligation. Although the creditor protests, and asserts the performance does not constitute satisfaction, his acceptance of the tendered performance, nevertheless, operates as an accord and satisfaction. Vol. II, Restatement of the Law of Contracts, § 420, pp. 791-792; Halloway v. Mountain Grove Creamery Co., 286 Mo. 489, 228 S. W.

451; Pollman & Bros. Coal & Sprinkling Co. v. St. Louis, supra; Adams v. Helm, 55 Mo. 468.

The order and judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.