248 S.W.2d 648 (1952)
CITY OF NEW YORK INS. CO. et al.
v.
STEPHENS et al.
No. 42511.
Supreme Court of Missouri, Division No. 2.
April 17, 1952.
As Corrected on Denial of Rehearing May 12, 1952.
Motion to Transfer to Denied May 12, 1952.
*649 Willson, Cunningham & McClellan, J. H. Cunningham, Jr., Richard D. Gunn, St. Louis, for appellants.
George W. Simpkins, St. Louis, for respondent Thomas F. Stephens, Trustee.
Roberts P. Elam, St. Louis, for respondent George N. Graff.
Motion to Transfer to Court en Banc Denied May 12, 1952.
ELLISON, Judge.
By this bill in equity the plaintiff-appellant insurance companies seek a declaratory judgment and to reform severally eight fire insurance policies with a total coverage of $59,500 issued by them on a large building in north St. Louis and running to the defendant-respondent "Thomas F. Stephens, Trustee, as his interest may appear." They claim a right of subrogation under the policies as against the defendants-respondents. Stephens was the trustee in a deed of trust on the property securing twelve principal promissory notes aggregating $75,000 and interest notes. Defendant-respondent Graff owned the property, was the mortgagor, gave the notes, and paid the premiums on the insurance. Defendant-respondent Iaconetti was the owner of the notes and deed of trust. The defendant-respondent First National Bank held them with other collateral securing Iaconetti's indebtedness to it. All of the respondents dispute the appellants' right of subrogation and claim attorney fees allowed by the trial court. The appellants complain of these also.
The building was destroyed by fire on or about January 1, 1948, with a loss equaling or exceeding the amount of the insurance. Stephens, as trustee in the deed of trust, claims a primary interest in the whole amount of insurance money to pay on the aforesaid secured debt and proper charges. Graff, owner of the property and maker of the secured notes, and Iaconetti as owner of the notes, likewise claim the insurance money to apply on the secured debt. The First National Bank claims the money because it holds the $75,000 secured notes as collateral covering Iaconetti's indebtedness to it.
The seven appellant insurance companies by their amended petition contended, as they do here, that their several policies of fire insurance were intended to secure only the interest of respondent Iaconetti as mortgagee of said property and primary holder of the $75,000 notes and interest secured by the deed of trust thereon; that said policies imposed no liabilities on them as underwriters in favor of the mortgagor, Graff, notwithstanding he paid the premiums on the policies; that the provision in each policy making the insurance run to "Thomas F. Stephens, Trustee, as his interest may appear," did not, or was not intended to, express any liability on the part of the companies to Graff as owner of the property and maker of the mortgage; and that the companies severally are entitled to be subrogated to the rights of mortgagee Iaconetti as against owner Graff to the extent of their several losses. And they prayed that the court so adjudge, or that *650 the several policies be reformed to permit a decree accordingly.
If this contention be sustained the appellant insurance companies can pay the $59,500 insurance money to the trustee Stephens for the use and benefit of the mortgagee, Iaconetti, or his pledgee, the First National Bank, but as subrogees they can recoup by suing and collecting the money from Graff the owner and mortgagor of the property. The appellant insurers' claims are based particularly on two provisions appearing in all the policies as follows:
"If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing the mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage."
"Subrogation. This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."
The facts, condensed as much as possible, were as follows. The insured building and land had been covered by a previous mortgage held by an insurance company and protected by insurance. That company was foreclosing or threatening to foreclose its mortgage. There had been a small fire at the place. Graff, the owner of the property, was represented by a real estate broker, Mosley, who undertook to secure a new mortgage loan and new insurance for Graff. Mosley succeeded in obtaining the loan from respondent Iaconetti, and applied to an insurance man, Martin, for new insurance to go with the loan but the latter was unable to obtain it from his companies. Martin then took up the matter with another insurance man, Powers. The latter declined the risk, saying his companies did not care to insure in the name of Graff, the owner, because of the earlier policy cancellations by other companies of fire policies securing the previous mortgage. Powers called in another insurance man, Hemenway, who represented still other fire insurance companies. Hemenway contacted his companies and they declined to write the insurance in Graff's name.
Subsequently Powers informed Martin that he thought the insurance could be placed if it were written as "single interest" insurance in the name of Stephens, the trustee in the deed of trustbut he did not suggest to Martin that this would restrict the insurance coverage as to the interests to be protected, in the sense that the insurers would retain a right of subrogation against the mortgagor, Graff. Martin submitted this information to Graff and his representative, Mosley, and they agreed to it. Graff understood the insurance would run to trustee Stephens, but was not told the insurance companies claimed the right to sue him as subrogee if there was a loss under the policies. He thought the insurance would cover his interest in the property. He paid the premiums and also paid Mosley $10,000 for obtaining the new loan, and Mosley told him he was covered by the insurance. And he never saw the policies. They and his notes to Iaconetti were delivered directly to the First National Bank, or to Stephens, who was one of its officers, as collateral to protect Iaconetti's debt to it. This was done by Martin.
Powers was not the agent of any of the appellant insuring companies. Nor was he the agent of owner Graff, although appellants so contend. He had never seen Graff. When he found he could not place the insurance with his own companies he told Martin he though he "might broker it out" through some other agency. In that case the policies are signed by the agent of the companies which furnish the insurance, and the commissions are split. The device of making the policies run to "Stephens, Trustee, as his interest may appear" was first suggested by Stephens, himself. He was an officer of the First National Bank and knew the bank held Iaconetti's former notes and deed of trust which were being refinanced in the transactions here involved. He was the trustee in the former deed of trust also, and wanted to protect the bank.
*651 Mr. Hemenway testified that the objective of protecting the bank could have been attained by making the insurance payable to the owner of the real estate with a mortgage clause payable to the trustee as his interest might appear. Or it could have been made payable to the owner and the mortgagee as their several interests might appear. And he conceded the clause in the instant deed of trust making the insurance payable to the trustee (alone) as his interest might appear, was unusual. In fact he said that in his 26 years experience as an insurance man he had never done it before, though he had heard of its being done.
It is indisputable that respondent Graff, the owner and mortgagor of the property, wanted to be protected by the insurance along with the trustee and thought he was. He was perfectly willing to let all the insurance money be paid to Stephens as trustee and applied on the mortgage indebtedness. But is is also obvious that he did not know the appellant insurance companies claimed the right under the policies (which he never saw) to pay the insurance money to the trustee and then by subrogation recover it back from him (Graff) after he had paid the premiums on the policies and $10,000 to Mosley to put the deal through.
For these reasons we think appellants have failed to make a case under the decisions cited in their brief[1] holding that if a written instrument fails to express the mutual intention the parties had in making the contract equity will grant relief. They do so hold where the mutuality is clearly shown. But where it is not, the contrary is true, for the evidence must be clear, cogent and convincing.[2]
The appellant insurance companies next assert the following, which we quote as it appears in their brief: "A fire insurance policy written to insure only the trustee in the Deed of Trust as his interest may appear, not naming the owner of the property and containing a provision that in the event of no liability to the mortgagor or owner of the property the insurance companies shall be subrogated pro tanto to an interest in the notes and mortgage (without impairing the mortgagee's remaining balance), constitutes insurance solely on the interest of the mortgagee, and upon payment of a fire loss the insurance company is entitled to be subrogated to an interest in the notes and Deed of Trust."
We interpret this complicated assignment as meaning specifically that where, as here, the several fire insurance policies were written to insure Stephens, the trustee in owner Graff's deed of trust, as his trustee interest may appear, without naming Graff as the owner of the property; and where the policies contained a provision that in the event of no liability to the mortgagor and owner Graffthen the insurance companies will be subrogated pro tanto to an interest in the notes and mortgage subject to and without impairing mortgagee Iaconetti's remaining balance; and the insurance in those circumstances will cover only the interest of mortgagee, Iaconetti, and upon payment of the fire loss the insurance companies will be subrogated to an interest in Graff's notes and deed of trust subject to Iaconetti's prior rights. On this point appellants cite Dick v. Franklin Fire Ins. Co., 10 Mo.App. 376, Id., 81 Mo. 103.
We think there is no merit in the assignment. In the first place, we have refused to hold that mortgagor Graff had no interest in the insurance. The insurance policies were made to Stephens, "Trustee, as his interest may appear", he being the trustee in the deed of trust given by Graff to secure his notes to Iaconetti. And as trustee he held the proceeds of the insurance as he would the property, for the benefit of both parties to the deed of trust. He owed the duty of strict impartiality to both, and to the First National Bank to *652 which the notes and security had been assigned by Iaconetti as collateral to secure his debt. [We refer to the decisions cited below,[3] not because of any dereliction on the part of the trustee, for there was none, but only to show the rights of the other parties to the deed of trust.] Graff had stipulated in the deed of trust that he would keep the encumbered premises insured against fire losses. That would inure to his own benefit as well as Iaconetti's. For if the premises were destroyed by fire without insurance he (Graff) would suffer that loss and still be personally liable on his notes to Iaconetti.
Another reason why the appellant insurers' contention on this assignment is unavailing, is that it not only assumes their non-liability to mortgagor Graff [which contention we have just overruled] but further concedes that by subrogation they can only recover pro tanto against Graff subject to Iaconetti's primary full coverage under the policies. The insurance coverage under the policies was only $59,000, whereas Iaconetti's outstanding unpaid notes secured by the mortgage amounted at the time to much more than thatover $68,000. There has been no excess recovery here by the trustee or Graff the mortgagor, who, we have held, was covered by the insurance insofar as the notes and mortgage were concerned. In these circumstances the appellant companies are not entitled to subrogation against him. Home Insurance Co. of N. Y. v. Smith, 235 Mo.App. 552, 557(4), 140 S.W.2d 64, 67(4); Lowenstein v. Queen Ins. Co., 227 Mo. 100, 117-8(5), 127 S.W. 72, 76; Zeiger v. Farmers & Laborers' Cooperative Ins. Ass'n, 358 Mo. 353, 361(3), 214 S.W.2d 426, 428-9(3).
The appellant insurers' third assignment complains of the trial court's decretal allowance against each of them severally, of a 10% penalty and reasonable attorney fee, for vexatious delay under RSMo 1949, § 375.420, V.A.M.S. The complaint is based on three grounds: (1) that such penalty must be sought by a suit brought by the policy holder against the insurer, whereas here the right is asserted by an answer and counterclaim; (2) that the statute is highly penal and has no application to a declaratory judgment suit for the reformation of the policies, with the full amount of the policies paid into the court registry; (3) that the allowances under the statute were excessive.
The amounts of the several policies and interest with the damages and attorney fees assessed, are as follows:

------------------------------------------------------------------------
Name of Amt. of 10% Atty.
Company policy Interest damages fees Total
------------------------------------------------------------------------
Employers' Fire Ins.
 Co., Boston 3,000.00 35.00 300.00 600.00 3,935.00
Commercial Union
 Assurance Co. 3,000.00 35.00 300.00 600.00 3,935.00
Hanover Fire Ins.
 Co. 3,000.00 35.00 300.00 600.00 3,935.00
City of New York
 Ins. Co. 3,000.00 35.00 300.00 600.00 3,935.00
North British &
 Mercantile Ins.
 Co. 3,500.00 43.83 350.00 700.00 4,593.83
Phoenix Assur. Co. 12,500.00 145.83 1,250.00 2,500.00 16,395.83
Lloyd's of London 31,500.00 525.00 3,150.00 6,300.00 41,475.00
 --------- ------ -------- --------- -----------
Totals $59,500.00 $854.66 $5,950.00 $11,900.00 $78,204.66
-------------------------------------------------------------------------

*653 It is true that this is a declaratory judgment suit, with the amount of the policies paid into the registry of the trial court by the appellant insurers. But there was long delay before they did that. The fire occurred on January 1, 1948. Appellants denied liability and over six months later filed this suit on July 10, 1948, also depositing on the same day $28,000 of the insurance money. On July 30 they deposited $21,000 more, and on August 30 the final $10,500. As late as March and April, 1948, they advised trustee Stephens that the companies were rejecting the proofs of loss because they did not contain an estimate of the cost of repairing or replacing the building, or show the interest of the mortgagee Iaconetti, whereas the building was a total loss. Also overtures were made by the companies for a settlement on the basis that the companies be subrogated to the rights of Stephens, the trustee, to whom the policies were made payablenot Iaconetti the mortgage holder as they now contend. This, we think, warranted the conclusion of the trial chancellor that there had been vexatious delay.
And the further contention is made that the statute, § 375.420, supra, is highly penal, and has no application to declaratory judgment suits for the reformation of insurance policies, citing Maryland Casualty Co. v. Dalton Coal and Material Co., 8 Cir., 184 F.2d 181, 183 (2, 3). The statute, supra, provides that "In any action against any insurance company to recover the amount of any loss under a policy of fire * * * insurance" the trial court may enter judgment for the penalty not exceeding 10% if it appears from the evidence that the company has vexatiously refused to pay the loss. The Circuit Court of Appeals held a declaratory judgment suit brought by an insurance company was not a suit against the company within the meaning of the statute. And that is true. The same has been held in this state in Corder v. Morgan Roofing Co., 355 Mo. 127, 141(7), 195 S.W.2d 441, 448(12).
But in the instant case the mortgagor Graff filed a long cross-bill against the appellant companies praying judgment on their several policies and for the 10% penalty and reasonable attorney fee for vexatious delay on the part of the companies. The trustee Stephens did the same on behalf of Graff, the mortgagor, and Iaconetti the mortgagee, adopting by reference parts of Graff's cross-bill. In these circumstances we think the relief sought was allowable.
Finding no error in the trial proceedings the decree below is affirmed.
All concur.

On Motion for Rehearing
PER CURIAM.
Appellants vigorously contend in their motion for rehearing and suggestions that Mr. Powers was owner Graff's general agent, and that Graff was bound by what Powers did, whether he (Graff) knew of it or not, since he accepted the benefit of Powers acts.
This contention must stand or fall on these facts. Respondent Graff, owner of the insured property, was originally represented by Mosley the real estate broker, and Martin the insurance agent whom Mosley first approached when he sought new insurance on the property running to Graff, to protect the new mortgage loan which Graff was placing on the property. Martin testified his companies would not accept the insurance "in the name of Graff." He called in another insurance man Powers. He testified Powers told him his companies "would not insure Mr. Graff." Powers then conceived the idea of "brokering out" the insurance and contacted a third agent Hemenway, and asked him to write the insurance "in the name of the owner, Mr. Graff." He said Hemenway told him his companies couldn't handle it.
Then Powers suggested to Martin a "single interest" policy covering the interest of the trustee in the mortgage, Mr. Stephens. Mr. Hemenway's companies accepted that plan and the policies were written in favor of "Thomas F. Stephens, trustee, as his interest may appear." And Stephens as trustee represented the interests of both the mortgagor and the mortgagee.
*654 We do not agree that the foregoing facts made Powers a general agent for Graff. It is clear that Graff thought he was covered as mortgagor by the insurance, and paid the premiums on that basis. He had never authorized it to be issued otherwise. Neither did Powers and Hemenway assume to determine the form of the policies. They submitted the proposed form to the companies or some authorized agent in Chicago. In fact Powers was not an agent but a broker. He testified his firm were insurance agents and brokers, and appellants' counsel once during the trial referred to him as a broker. He "brokered" the insurance, and the commissions were split, as we understand. If Powers was a broker he was a middleman and owed a duty to both the insured and the insurer. 12 C.J.S., Brokers, § 1, page 6; 34 C.J.S., Executors and Administrators, § 136, page 797. Also he knew Graff wanted the insurance written in his own name.
Appellants' witness Hemenway testified that the form used in writing these policies insuring trustee Stephens alone "as his interest may appear" was unusual and in a long experience he had never done it before. He agreed also that the policy could have been written to cover the interest of the mortgagee only, thereby excluding the interest of the mortgagor if that was intended.
We shall not extend this Per Curiam opinion by discussing the remaining assignments in the motion for new trial.
The motion for rehearing is overruled.
NOTES
[1] Kanan v. Hogan, 307 Mo. 269, 270 S.W. 646; McVey v. Phillips, Mo.Sup., 259 S.W. 1065; General Refractories Co. v. Howard, 328 Mo. 1139, 44 S.W.2d 65.
[2] General Refractories Co. v. Sebek, 328 Mo. 1143, 1154, 44 S.W.2d 60, 65(4); Employers' Indemnity Corp. v. Garrett, 327 Mo. 874, 886(9), 38 S.W.2d 1049, 1054(10-11); Binswanger v. Employers' Liability Assur. Corp., 224 Mo.App. 1025, 1035(2), 28 S.W.2d 448, 453(2).
[3] Goode v. Comfort, 39 Mo. 313, 325(1); Ewing v. McIntosh, 359 Mo. 625, 630-1, 222 S.W.2d 738(3); Collins v. Gaskill, 359 Mo. 171, 181(4), 221 S.W.2d 181, 186(5).