Buford LONG, Plaintiff-Respondent,

v.

Ernest WEILER and Patricia Weiler,
Defendants-Appellants.

No. 31899.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1965.

Rehearing Denied Oct. 20, 1965.

Roberts & Roberts, Raymond R. Roberts, Farmington, for defendants-appellants.

Francis Toohey, Jr., Perryville, for plaintiff-respondent.

DOERNER, Commissioner.

This suit on a note, recently reassigned to the writer, originated in the Magistrate Court of St. Genevieve County, where plaintiff prevailed. Defendants appealed, plaintiff was granted a change of venue to the Circuit Court of St. Francois County, and the cause was tried by that court without a jury. Judgment was entered for plaintiff in the sum of $1325.66, which included principal, interest, and an attorney's fee, and defendants brought this appeal.

The note was for the face amount of $1,000, and was executed on May 16, 1959 by the defendants as makers, to the plaintiff as payee. It bore interest at the rate of six per cent per annum, and as no time for payment was expressed therein, it was in effect a demand note. Section 401.007, RSMo 1959, V.A.M.S. Notations of credit on the back indicated that payments of $8.75 for interest and $41.25 on the principal were made on September 25, 1959, and interest of $22 on August 12, 1960. From the stipulations of the parties and the evidence adduced it is undisputed that the note came into existence and was given in this manner: Southern Missouri Dari-Castle, Inc., a corporation, (of what state does not appear) was the owner of certain real estate in the City of St. Genevieve on which was located a building for the operation of what was termed a "Dari-Castle business." By a written lease dated May 16, 1959, Southern Missouri leased the premises to defendants. The only part of the lease pertinent to this litigation was a clause which provided that the " * * * Lessee shall at the time of the signing of this lease pay the sum of One Thousand dollars ($1000.00) DOLLARS in advance against rental to be due for the tenth year of the term of this lease," the tenth being the final year of the term. According to plaintiff, who was president of Southern Missouri, the defendants paid the company $7500 for certain equipment at the time the lease was entered into, but they did not have the $1,000 to pay the advance against the rental for the tenth year. Plaintiff in his individual capacity thereupon loaned defendants the money to make the payment and took their note now in suit.

Plaintiff's petition was in conventional form. By their answer defendants admitted their execution of the note but as an affirmative defense pleaded accord and satisfaction, in that defendants sold the restaurant to one Marvin Otte, that plaintiff was aware of and participated in the consummation of the sale, and that "in connection with said sale it was agreed by and between plaintiff and defendants that plaintiff would look to the said Marvin Otte for the collection of said Note. * * *" In this appeal defendants continue to assert their plea of accord and satisfaction, and, for good measure, have raised the non-pleaded affirmative defense of failure of consideration.

We find from the evidence that some time shortly before August 12, 1960, defendants, who desired to sell their business, found buyers therefor in the persons of Mr. and Mrs. Marvin Otte. The price agreed upon was $9069 for the "equipment, lease and supplies," according to the bill of sale, which sum the Ottes paid the defendants on August 10, 1960. Defendant Weiler showed the Ottes the franchise he held from Dari-Castles, Inc., of Joliet, Illinois, the parent company, but he did not show the Ottes the lease from the Southern Missouri company, nor did he inform them of the advance rental clause or the note to plaintiff. Since the defendants' lease contained a prohibition against any subleasing, assigning or other disposition without the written consent of Southern Missouri it was necessary for the defendants, in order to complete the transaction, to obtain the cooperation and approval of Southern Missouri. Weiler communicated with plaintiff Jones, and arrangements were made for a conference.

The conference was held on August 12, 1960, in St. Genevieve. Present were Weiler, Mr. and Mrs. Otte, plaintiff, and Francis Toohey, Jr., of Perryville, Missouri, whom plaintiff testified was " * * * my attorney." Aware of the purpose of the conference plaintiff had brought with him a new lease from Southern Missouri to the Ottes, which except for the names and the term (for the balance of defendants' term) was in all respects the same as the defendants' lease from Southern Missouri. During the course of the conference the Ottes learned for the first time of the existence of defendants' note and of the clause regarding the advance of $1,000 for rental for the final year. There are three versions of what was ultimately agreed upon. Weiler's version was that the Ottes agreed " * * * to pay the 10th year lease, * * " by which we presume he meant the advance of $1,000 towards the rent for the final year; that Toohey did not have a note form with him but said he would send one up the next day; and that plaintiff agreed that if he paid the interest due to date of $22 and Toohey's travel expenses of $50, plaintiff would cancel defendants' note and lease. Plaintiff, after stating that there was quite a bit of conversation about the termination o.‌ defendants' note and lease, that Otte was so upset at learning of the advance in rental that the situation became confusing, and that he couldn't recall too much of what was said about defendants' note, testified on direct examination that, "If a new note was drawn I agreed to accept it from the new people if they agreed to go ahead and sign it." On cross-examination he stated:

"Q You don't recall telling Mr. Wiler (sic) that if paid the interest up to date he was released on the note?

"A Only if we received payment on the note.

"Q If he'd pay the interest up to date then he was to be released on the note, do you recall that being—

"A If we received the full amount of the face of the note.

"Q Not just the interest?

"A No. In other words, before I would release the note I'd have to have full payment on it in some way or another."

Otte, called as a witness by plaintiff, testified that Weiler had never told him about the $1,000 note before the conference, that he was surprised to learn of it because Weiler had previously assured him that all bills were paid, and agreed with plaintiff that when he learned of the note " * * * there was quite a mix up * * *" for a while. Otte's version of the result reached was that he said, " * * * I'd have to look into it further or think about it before I'd ever sign a note, take over somebody else's note further or think about it." Asked whether he had tentatively agreed to give plaintiff a note, he answered, "I don't think I gave a definite answer on it." He recalled that Weiler paid the interest up to date of $22 on defendants' note.

Defendants introduced in evidence their check to Toohey for $72, as well as his receipt for $50 for "Closing transfer," both dated August 12, 1960. The note, as stated, bears on the back the notation that interest of $22 was paid on August 12, 1960. They also introduced a copy of a letter Toohey wrote Mr. and Mrs. Otte on August 13, the day after the conference, the material part of which reads:

"Relative to the note I have contracted (sic) the people in the Ozark Business Management Company and find that they are willing to except (sic) the $50.00 per month providing a payment of $50.00 be forthcoming shortly and that you pay promptly with your rent each month the $50.00 as heretofore agreed. We would appreciate it very much if within the next three or four months if at all possible that you could pay a little extra from time to time on this to reduce the balance. Therefore, I am enclosing a new note for $1,000.00 which you should execute and return to me. * *"

Otte admitted that he had received the original of the letter, and testified that he had never signed a note for plaintiff. Asked on cross-examination whether the letter reflected his recollection of the agreements at that time, he answered, "To my knowledge," except that, "I don't recall agreeing to pay $50.00 a month."

Defendants have termed their first defense that of accord and satisfaction. As the phrase suggests, an accord and satisfaction consists of two elements: that of the "accord," or agreement, whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, something other than or different from that which the second party is, or considers himself to be, entitled to; and the second element is the "satisfaction," that is, the execution or performance of the accord or agreement. Bohle v. Sternfels, Mo., 261 S.W.2d 936; Crouch v. Quigley, 258 Mo. 651, 167 S.W. 978; Western Military Academy v. Viviano, 235 Mo.App. 301, 133 S.W.2d 1098; 1 C.J.S. Accord and Satisfaction § 1, pp. 462, 463. In order to establish a valid defense of accord and satisfaction it is necessary that the evidence meet both requirements. For the general rule is that an accord without the satisfaction is not binding or enforceable, does not operate as a discharge of the original obligation, and is revocable by either party. Bohle v. Sternfels, supra; Crouch v. Quigley, supra; Western Military Academy v. Viviano, supra; 1 C.J.S. Accord and Satisfaction § 38, p. 543. However, where the new agreement or promise, rather than its performance, is accepted in satisfaction of the original obligations, such acceptance results in a novation, by which the original obligation is discharged. Priest v. Oehler, 328 Mo. 590, 41 S.W.2d 783; 1 C.J.S. Accord and Satisfaction § 1 b(5), p. 465. In Missouri the term "novation" has been frequently applied to such a tri-party agreement as defendants claim was made here, that is, a contract whereby a creditor consents to release his debtor in consideration of the assumption of the debt by a third party. Di Franco v. Steinbaum, Mo.App., 177 S.W.2d 697; Morriss v. Finkelstein, Mo.App., 145 S.W.2d 439.

There appears to have been some uncertainty on the part of defendants regarding their claim as to the accord entered into with plaintiff at the conference on August 12. In their answer they alleged that the agreement was that " * * * plaintiff would look to the said Marvin Otte for the collection (payment?) of said Note, * * *" which implies that defendants' note was not to be cancelled and returned to them but to remain in plaintiff's hands on the understanding that plaintiff was to release them from liability thereon and to look only to Otte for payment. In their brief, however, defendants do not refer to that theory and instead contend that the accord was that, " * * * it was agreed that Otte should sign a new note and that Defendants were to be released upon their note upon payment by them of the interest due to date in the sum of $22.00 * * *" It is undisputed that the Ottes never executed and delivered a note to plaintiff. For that reason defendants are in no position to claim that there was a satisfaction by performance. What they now contend, in effect, was that plaintiff unconditionally accepted the Otte's *promise* to make a note, as distinguished from their actual execution of one, as the satisfaction of the accord, and in consideration thereof contemporaneously agreed to release defendants from liability on their note to him.

The burden of proving their affirmative defense, whether called an accord and satisfaction or a novation, was on the defendants. Zacher v. Peters, Mo.App., 179 S.W.2d 908; Hutcheson & Co. v. Providence-Washington Ins. Co. of Providence, R. I., Mo.App., 341 S.W.2d 142. Whether Otte unequivocally promised to execute a new note to plaintiff, and whether plaintiff unconditionally accepted the promise in satisfaction of defendants' obligation were questions of fact for the determination of the trial court. Bohle v. Sternfels, supra;

Manufacturers Bank & Trust Co. v. Buder, Mo.App., 191 S.W.2d 290. As to these issues there was a direct conflict in the evidence. Defendant Weiler's version of the agreement made supported the contention now advanced. Plaintiff's version, in effect, was that he agreed to release defendants only if he received payment in full on their note " * * * in some way or another," including the actual execution and delivery of a note to him by the Ottes. Otte's testimony was that he said he would have to think about the matter and that he never definitely promised to do so. The determination of the issues depended solely upon the credibility of the witnesses. It is apparent from the judgment that the trial court resolved the issues in favor of the plaintiff. It had the opportunity of observing the witnesses and of judging their credibility, and absent any compelling reason to the contrary, the rule of deference should apply. Section 510.310, RSMo 1959, V.A.M.S.; Houghton v. West, Mo., 305 S.W.2d 407; City of Warsaw v. Swearngin, Mo., 295 S.W.2d 174. Defendants argue that Toohey's letter of August 13 supports their contention that the Ottes agreed to execute a note to plaintiff. We agree, but it does not substantiate defendants' claim that plaintiff agreed to accept their promise to do so, rather than their actual performance, in satisfaction of defendants' obligation.

▮ Defendants' second point, that there was a failure of consideration, is premised on the assumption that the note was given in payment of part of the rent for the tenth year of the lease from Southern Missouri Dari-Castles, Inc. And the argument advanced is that since the lease was cancelled the consideration for the note therefore failed. The fallacy in defendants' contention is in the premise. The fact is that defendants' note was not given to Southern Missouri in payment of part of the rent for the tenth year of the lease; rather, the note was made payable to plaintiff in his individual capacity and the consideration was the $1,000 which he personally loaned to defendants. While defendants may have used the funds they borrowed to pay the advance rental, the two transactions were separate and distinct, and the cancellation of the lease did not relieve defendants of their obligation to repay plaintiff.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

RUDDY, P. J., ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.