KOCH–LAUMAND CONTRACTING, INC., Plaintiff,

v.

The MAY DEPARTMENT STORES COMPANY, Defendant-Appellant,

Norman L. Rossi Plumbing Company, Inc., Defendant,

and

Kenneth Balk & Associates, Inc., Defendant-Respondent.

No. 43302.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 29, 1981.

J. L. Pierson, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for defendant-appellant.

Donald L. James, Brown, James, Rabbitt, Whaley, McMullin & Pitzer, St. Louis, for defendant-respondent.

SNYDER, Judge.

The May Department Stores Company (May) appeals from the trial court's adverse judgment in a contract action against Kenneth Balk & Associates, Inc. (KBA). May alleged in its petition that the parties agreed to joint legal representation in litigation in which KBA and May were co-defendants, and asked the court for a judgment against KBA for legal fees owed under the terms of their agreement.

The trial court, sitting without a jury, ruled in part that no contract was formed between May and KBA because KBA did not accept May's offer but instead made a counteroffer which was not accepted by May. The judgment of the trial court is supported by the law and the evidence and is affirmed.

Koch-Laumand Contracting, Inc. sued May, KBA and Norman L. Rossi Plumbing Company, Inc. Koch-Laumand alleged May had not paid it in full for work done on a construction contract, charged KBA with negligent design and charged subcontractor Rossi with negligent installation.

On November 25, 1975 during the initial stages of the litigation on the construction contract, May sent the following letter to KBA:

"This letter is to confirm your offer that Kenneth Balk and Associates, Inc., ('KBA') and The May Department Stores Company ('May') retain Mr. Donald James, of Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney and Brown, to represent KBA and May jointly in the captioned matter on the terms and conditions set forth below, and our acceptance of your offer.

1. Mr. James is to charge KBA for all his services in connection with such

joint representation in the captioned matter, and May agrees to pay one-half of the legal fees charged to KBA by Mr. James in connection with his representation of KBA and May in the captioned matter, up to a maximum charge to May of $1,000.

2. If, as a result of or in connection with the services which KBA has provided to May in connection with May's Cave Springs Venture store site and gas station, May becomes liable to Koch-Laumond (sic) in connection with the captioned matter, KBA agrees to indemnify and hold May harmless from and against any such liability, including any judgments, damages or settlements.

May and KBA are aware that a conflict of interest may potentially become apparent in the preparation of and presentation of their defenses in the captioned matter (although both May and KBA believe that the likelihood of any such conflict of interest is very remote).

However, in the event any facts come to Mr. James' attention which would indicate such a potential conflict may exist, he shall so inform May immediately; if May determines that any potential conflict of interest merits separate representation in the captioned matter, then May may terminate the joint representation, and may retain separate counsel. In such event, the amount of Mr. James' fee to be paid by May shall be adjusted to reflect, fairly and equitably, such termination. If the above correctly reflects our agreement, will you please sign the enclosed copy of this letter and return it to me."

On December 17, 1975 KBA signed and returned a copy of May's letter but added the following language after the signatures:

"I assume James' 'legal fees' include court costs, expert witnesses, tests we may run, etc.

P.S. I tried to call you today about the above point, but you were out. I just got a response from Don James about the above letter being OK—that is why the delay. Going on vacation tomorrow—if any problems with my assumption we can work it out when I get back."

May did not respond to KBA's concern whether "legal fees" would include court costs and the expenses of experts and tests. Donald James and Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney and Brown (MM) then represented both May and KBA until the cause came on for trial. May did not pay any part of MM's charge for legal services.

At a pretrial conference on February 8, 1977, the trial court raised the question whether the joint representation of May and KBA was proper given the potential conflict of interest between the co-defendants. Over May's objection but at the request of KBA, the joint representation of May and KBA was terminated on February 9, 1977, and MM withdrew as attorneys for May by leave of court. A different law firm, Lewis, Rice, Tucker, Allen and Chubb, then entered their appearance as attorneys for May, and May filed a cross-claim against KBA for indemnification and attorney fees under the purported contract.

In the main action, the trial court found against Koch-Laumand and in favor of all defendants, including May and KBA, on the issue of liability on Koch-Laumand's claim. In a subsequent trial on May's cross-claim against KBA based upon the agreement for attorney fees and litigation expenses, the trial court ruled against May, holding in part that May made an offer for dual legal representation which KBA did not accept, but instead, made a counteroffer which May never accepted. Therefore, the trial court held there was no enforceable agreement.

In the only point on appeal which need be discussed, May argues that the trial court's conclusion that the letter signed by May and KBA was not a contract is erroneous because the letter did manifest the agreement of the parties upon terms, and because the parties did undertake performance of the contract until KBA breached the contract. May cannot prevail upon its contention because the trial court's conclu-

sion that the offer proposing joint legal representation and indemnification was never accepted is supported by the law and evidence.

May's letter to KBA proposing joint legal representation with shared legal fees and indemnification was an offer to contract. The purported acceptance of this offer by KBA was not, however, upon the identical terms proposed by May. May had proposed to pay a portion of the "legal fees charged to KBA by Mr. James." The purported acceptance by KBA introduced the suggestion "legal fees" would "include court costs, expert witnesses, tests we may run, etc."

An offer must be accepted as tendered to result in a contract. *Kalivas v. Hauck*, 365 Mo. 923, 290 S.W.2d 94, 101–102[5–7] (1956). If the purported acceptance of the offer introduces new or variant terms or omits, enlarges or modifies the terms of the offer, the purported acceptance amounts to a counteroffer and rejection of the original offer, and no contract has been formed. *Kalivas v. Hauck, supra; Coffman Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763, 773[15, 16] (Mo.App. 1975).

The suggestion by KBA, in the purported acceptance of May's offer, that "legal fees" include court costs and other expenses in preparation for trial introduced a new and variant term and was not an acceptance of May's offer. Common understanding would not support the conclusion an attorney's "legal fees" would automatically include fees and charges payable to the court, the expenses of expert witnesses, or the expense of tests conducted in preparation for trial. Although an attorney may be reimbursed for the advancement of such costs, *Shuck v. Pfenninghausen*, 101 Mo. App. 697, 74 S.W. 381, 382[1] (1903), advancements and payments of expenses incident to litigation are not recoverable as the fee of the attorney. *Kimmie v. Terminal Railroad Association of St. Louis*, 344 Mo. 412, 126 S.W.2d 1197, 1199[4, 5] (1939) (attorney precluded, in action for his fee, from including his claim for advancements and payments of expenses incident to litigation).

Other than evidence that May never complained to KBA concerning inclusion of court costs and expenses of experts and testing in the term "legal fees", May did not introduce any evidence supporting its claim that the parties consistently intended "legal fees" to have such an unusual meaning. No agreement was ever reached on the inclusion of the disputed items of costs and expenses. May had the burden of proving the agreement was enforceable, *Coffman Industries, Inc. v. Gorman-Taber Co., supra* at 768, and the trial court's conclusion that no contract was formed is supported by the evidence.

May does not contend it accepted the counteroffer by KBA. No evidence was introduced that May communicated any agreement to pay a portion of legal fees, court costs and expenses of experts and tests, following the counteroffer by KBA. An uncommunicated intention to accept an offer is not an acceptance. *Thacker v. Massman Construction Co.*, 247 S.W.2d 623, 629–630[7–10] (Mo.1952); *Doerflinger Realty Co. v. Maserang*, 311 S.W.2d 123, 129[8, 9] (Mo.App.1958). Although the fact that acceptance of an offer was communicated to the offeror may be shown by the offeror's conduct, *Thacker v. Massman Construction Co., supra* at 630[12, 13], May has never contended actions taken by KBA's attorney in furtherance of joint legal representation showed that May had notified KBA that it had accepted the modified offer for joint representation and indemnification. If an offer calls for a promise, such as the promise solicited of May to pay a portion of legal fees, court costs and expenses, notice of acceptance by the offeree to the offeror is essential to formation of the contract. *Thacker v. Massman, supra* at 629[7–10].

The trial court's judgment that the contract which May sought to enforce was never formed is supported by and not contrary to the evidence and does not incorrectly declare or apply the law. Consequently, the judgment must be affirmed. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Rule 73.01(c).

It is unnecessary to consider the other points raised by appellant.

The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.