**REVERE COPPER & BRASS, INC., Appellant,**

v.

**MANUFACTURERS' METALS & CHEMICALS, INC., and John A. Benson, Respondents.**

**No. WD 34216.**

Missouri Court of Appeals, Western District.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 28, 1983.

Dennis D. Palmer, Russell S. Jones, Jr., Kansas City, for appellant; Shughart, Thomson & Kilroy, Kansas City, of counsel.

Albert Thomson, Kansas City, for John A. Benson; Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, of counsel.

Before CLARK, P.J., and PRITCHARD and LOWENSTEIN, JJ.

PRITCHARD, Judge.

A jury returned a verdict in favor of plaintiff against Manufacturers' Metals and Chemicals, Inc., upon accounts for $88,-360.56; and against Benson on certain notes given by Manufacturers', upon the submission that he breached a contract to endorse the notes, in the amount of $135,305.79.

Benson filed a motion for judgment N.O.V. upon the ground that there was never any agreement with plaintiff that it would accept the notes "absent (1) endorsements by John A. Benson and his father; and (2) personal financial statements of the endorsers (John A. Benson and his father), as shown by plaintiff's letters of February 3, 1981 and February 19, 1981 (both introduced into evidence) and attached hereto. Since there was no agreement by plaintiff to accept the notes, there was no binding contract upon which plaintiff could base its recovery that John A. Benson was personally liable." The trial court overruled that motion but granted a new trial to Benson upon the asserted ground that there was no evidence that plaintiff ever agreed to accept certain promissory notes as contained in Instruction No. 8, which is:

"Your verdict must be for the plaintiff against defendant John A. Benson if you believe:

First, plaintiff and defendant John Benson entered into an agreement whereby plaintiff agreed to accept certain promissory notes from defendant Manufacturers' Metals & Chemicals, Inc. and defendant John A. Benson agreed to endorse those notes as an individual grantor, and

Second, plaintiff performed its agreement, and

Third, defendant John Benson failed to perform his agreement, and

Fourth, plaintiff was thereby damaged."

Plaintiff contends that the trial court erred in granting Benson a new trial because Instruction 8 was a correct statement of the law; it was supported by substantial evidence; it hypothesized the existence and breach of a bilateral contract as called for by MAI 26.06; and the evidence showed that plaintiff and Benson entered into an

agreement whereby it agreed to accept a series of promissory notes from Manufacturers' and Benson agreed to endorse those notes, and that Benson failed to perform his promise to the detriment of plaintiff. Plaintiff asks that the verdict in its favor against Benson be reinstated.

Benson counters in his brief that the trial court erred in submitting the case to the jury, and should have sustained his motion for directed verdict because there was no evidence that Benson had ever orally agreed to endorse the notes or pay the debt of Manufacturers' and the testimony of Hart that Benson "never denied" he would endorse the notes is insufficient upon which to base a verdict against him. Benson asks that the order granting a new trial be reversed and a judgment be entered in his favor.

The facts are these: Plaintiff and Manufacturers' began doing business in the Spring of 1979, whereby plaintiff was a metal products fabricator and Manufacturers' was a metals broker, which solicited orders from its retail customers, obtained a price quote, and ordered products through plaintiff's Scottsboro, Alabama plant. By December, 1980, Manufacturers' had an unpaid open account with plaintiff for $123,-147.16, and its Scottsboro credit manager wrote Benson that until the past due balance was paid he would allow no new order entries, and if payment were not made by December 31, 1980, all orders currently in progress would be suspended. Benson then contacted plaintiff's General Credit Manager, Frank X. Hart, in New York, and they met in that city on January 20, 1981. Benson then admitted to Hart that Manufacturers' owed money to plaintiff, but stated that Manufacturers' was having financial problems and could not make payment at that time, and, according to Hart: "A As I recall, in discussion, he offered to settle it on the series of notes payable over approximately a year and a half. Q What did you say to his offer to pay in the series of notes? A I finally agreed to accept them provided

that it would bear the personal endorsement of he and his father, who were officers of the company. Q Was there any discussion as to whether or not Mr. Benson or his father would endorse the promissory notes? A Mr. Benson said his father could not endorse them because he was ill, having had a stroke. Q Was there any discussion between you and Mr. Benson that he would not endorse the notes? A He never denied that he would endorse them."

On February 3, 1981, Hart wrote Benson stating that Benson had agreed to a series of notes to offset the balance due Revere Copper from Manufacturers', totalling $123,146.17. A series of sixteen notes were enclosed, the first one, $2,000, being due February 1, 1981, and subsequent notes being due on the fifteenth of each month through May 15, 1982, with interest at 15% per annum. The letter recited, "The notes are made out for your signature on the face as Vice President and Treasurer and it was agreed you would personally endorse these notes on the reverse side. We also require the personal endorsement of your father as well as the personal financial statement of the endorsers." Benson then returned the notes, signed on the face by him as Vice President and Treasurer, but retained the first note for which he sent a check for $2,138.08 in payment of the principal and interest thereon. The notes were not endorsed on the reverse by Benson and his father, and no personal financial statements were furnished.

By letter of February 19, 1981, Hart returned the fifteen remaining notes to Benson, stating: "You have evidently overlooked your personal endorsement on the back of these notes as you agreed in my office on January 20, 1981. In my letter of February 3, 1981 I noted I would require personal financial statements of the endorsers. Mr. Benson I am sure you will agree Revere is trying to be more than cooperative in this matter and we are willing to go the route on the notes, but we will require you and your father's endorsement." Ben-

son replied on March 11, 1981: "Due to my father's physical condition, I am unable to obtain a personal financial statement or endorsement. My financial condition is such I cannot endorse the notes and have it be of value." Note No. 2 was retained by Benson who sent a check to Revere, $3,241.14, for its principal and interest. The fourteen remaining notes were returned to Revere again without endorsements on the reverse of them, and no personal financial statements were given by either Benson or his father.

■ The parties join issue on whether Benson, by his silence, agreed to endorse the notes (i.e. that he did not deny he would endorse the notes), upon which plaintiff relied to its detriment, but that is not the dispository issue as to the submissibility of plaintiff's case. That issue is whether the parties had a meeting of minds so as to create a contract for personal endorsements and for the furnishing of personal financial statements. Benson raises the issue obliquely in the argument portion of his brief. This he may do. See *Gibbs v. Bardahl Oil Company,* 331 S.W.2d 614, 620[1] (Mo.1960), where there was no assignment of error on appeal that the plaintiff failed to make a submissible case, the court saying, "However, the question of whether a submissible case was made is 'inherent in every case which comes to an appellate court' (*Lilly v. Boswell,* 362 Mo. 444, 242 S.W.2d 73, 77) * * *." See also *R.H. Macy and Company v. Bell,* 531 S.W.2d 58, 61 (Mo.App.1975), where the issue of the submissibility of a counterclaim was first raised in a supplemental brief; and *Anderson v. Maneval,* 410 S.W.2d 578, 581 (Mo. App.1966); and cases there footnoted. In this case, counsel for Benson made it clear in oral argument that it was his position that there was never any binding contract made that he would personally endorse the notes.

■ What the facts here show is that Benson, at the January 20, 1981 meeting with Hart, first offered to give a series of notes in lieu of Manufacturers' open account. Hart then finally agreed to accept the notes, "*provided that it would bear the personal endorsement of he and his father.*" (Italics added.) Benson then advised him that his father could not endorse them because he was ill, having had a stroke. Hart thereafter remained steadfast in his conditional offer to accept the notes, for in his letter of February 3, 1981, he advised Benson that the personal endorsements and financial statements of *both* Benson and his father would be required. Benson returned the notes signed only by him as Vice President and Treasurer of Manufacturers'. He thus rejected Hart's offer as made and the returning of the unendorsed notes amounted to a counteroffer. Plaintiff, although making further requests for endorsements, retained the series of notes, and ultimately filed suit upon them against Manufacturers' and against Benson upon his claimed agreement to endorse them personally.

■ The disposition of this appeal is governed by general principles of contract law. A first principle is that there must be a meeting of minds as to the subject matter of the contract. 17 Am.Jur.2d Contracts, § 18, p. 354; *Stone v. Stone,* 176 S.W.2d 464, 468[10, 11] (Mo.1944); *Fulton v. Bailey,* 413 S.W.2d 514, 518 (Mo.1967), and cases cited. In *Shofler v. Jordan,* 284 S.W.2d 612, 615[5] (Mo.App.1955), it was said, "What plaintiff in the instant case 'took * for granted' is unimportant and immaterial, for whether a contract is made and, if so, what the contract is depend upon what is actually said and done and not upon the understanding or supposition of one of the parties. (Citing cases.) In other words, the meeting of minds essential to formation of a contract may not be found or determined on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested from their words or acts. (Citing cases.)" See also *St. Louis Testing Laboratories, Inc. v. Mississippi*

*Val. Structural Steel Co.,* 254 F.Supp. 47 (E.D.Mo.1966) [aff'd 375 F.2d 565 (8th Cir. 1967)].

What Hart assumed at the outset, January 20, 1981, that his offer to take the series of notes in lieu of Manufacturers' open account upon endorsement by Benson and his father, and the giving of their personal financial statements, was accepted by Benson. The words used do not reveal an acceptance of the offer. Benson informed Hart that his father could not sign the notes because of ill health—an immediate rejection of that portion of the offer.

■ Plaintiff attempts to hold Benson to an acceptance of the offer for his own personal endorsement of the notes by his silence, i.e. "He never denied that he would endorse them." Hart's offer was, of course, that *both* Benson and his father endorse, and Benson was never advised that his own personal endorsement would suffice, and the contended acceptance by silence of Benson alone varies from the offer as made. Nevertheless, "It is a general rule of law that silence and inaction, or mere silence or failure to reject an offer when it is made, do not constitute an acceptance of the offer." 17 Am.Jur.2d Contracts, § 47, p. 385. No circumstances are present here which would justify treating silence or inaction as an acceptance under that authority such as previous relations between the parties as in past similar transactions or dealings. Benson had no duty to respond to these facts. See *Albrecht Chemical Co. v. Anderson Trading Corp.,* 298 N.Y. 437, 84 N.E.2d 625, 626 (1949), where it was said that a recipient of an offer is under no duty to speak, his silence may not be translated into an acceptance where it is not misleading, merely because the offeror purports to attach that effect to it. See also *Karlin v. Avis,* 457 F.2d 57 (2nd Cir.1972) [cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972)], citing the *Albrecht* case, supra; and Restatement of the Law of Contracts, 2d, § 69, for exceptions to the general rule that silence of the offeree does not operate

as acceptance, the factual bases for such exceptions not here being present.

■ The factual situation here is that Hart's original offer was continued to be made in the same form, by his letters, first endorsing the notes which were returned without the requested endorsements or financial statements, then further requesting the endorsements. Benson's returning of the notes without endorsements or financial statements amounted to a rejection of Hart's offer. The controlling rule is stated in *Southern Real Estate & Finance Co. v. Park Drug Co.,* 344 Mo. 397, 126 S.W.2d 1169, 1172[5] (1939), quoting *State ex rel. Equitable Life Assur. Society v. Robertson, et al.,* 191 S.W. 989, 991[1] (Mo. banc 1917), " 'The contract is not complete or consummated until the proposition of the one is presented to the other and by him accepted as presented without conditions or qualifications. In other words, the acceptance of the proposition presented by the one must be accepted by the other in the form tendered; and if the acceptance *omits,* adds to, or alters the terms of the proposition made, then neither party to the negotiations is bound. So long as any element of the proposition is left open, the contract is not complete and, of course, is not binding on anyone.' " [Italics added.] See also *Koch-Laumand, etc. v. May Dept. Stores,* 623 S.W.2d 52, 55[1] (Mo.App.1981), and cases cited.

There is another facet to this case. If Benson endorsed the notes alone, without his father, he would have been solely liable therefor, and would not have the benefit of his father sharing that liability. Benson said as much in his letter of March 11, 1981. The offer as made was clearly rejected. Plaintiff has failed in its burden of proof that an agreement was made. It is not necessary, therefore, to consider the propriety of the giving of Instruction No. 8.

The order granting Benson a new trial is reversed, and the case is remanded with directions to enter a judgment in favor of Benson and against plaintiff on its claim.

All concur.