John K. **BESTOR**, Executor of the Estate of Ted H. Greene, et al., Plaintiffs-Appellants,

v.

**AMERICAN NATIONAL STORES, INC.,** et al., Defendants-Respondents.

No. 48184.

Missouri Court of Appeals, Eastern District, Division Four.

April 16, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 1985.

Application to Transfer Denied June 25, 1985.

Paul D. Sinclair, Kansas City, for plaintiffs-appellants.

Theodore Y. Blumoff, St. Louis, for American Nat. Stores, Inc.

Charles A. Newan, James W. Erwin, St. Louis, for American Investment Co. and Public Acceptance Co.

SATZ, Judge.

Plaintiffs,[1] lessors sued defendants, lessee, American National Stores (American Stores), for breach of a lease. Plaintiffs appeal from a finding in favor of American Stores. We affirm.

Plaintiffs sued American Stores in five counts, all of which arise from a lease transaction. In Count I, plaintiffs sued American Stores for breach of the lease.[2] The trial court heard only this Count in a jury waived trial. The court ruled against plaintiffs, in favor of American Stores, and ordered plaintiffs to specifically perform an "accord and satisfaction" that the court found the parties had entered. This order was not designated as final for purposes of appeal, and Counts II through V were not ruled on. Plaintiffs, nevertheless, appeal from the order entered on Count I. American Stores contends the appeal is premature.

We first dispose of American Stores' contention. American Stores pleaded an "accord and satisfaction" as an affirmative defense to all Counts. The trial court found the parties had entered into an "accord and satisfaction agreement," the terms of which required plaintiffs to release defendants from any and all claims of plaintiffs.[3] Thus, the court, by its finding, effectively disposed of plaintiffs' remaining claims, Counts II through V. Consequently, with all claims disposed of, the Court's finding on Count I is a final judgment for purposes of appeal. *See, e.g., Chubb Group of Insurance Companies v. C.F. Murphy & Assoc., Inc.,* 656 S.W.2d 766, 771 (Mo.App.1983).

We next consider the merits of plaintiffs' appeal. Governed in our review by the well-known standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we summarize the facts found by the trial court.

In April, 1971, plaintiffs, as lessors, entered a 25 year lease with defendant, American Stores, as lessees. American Stores vacated the premises in 1972, but continued to pay rent until October 1, 1974. American Stores then took steps which it believed worked as a termination of the lease, but plaintiffs did not agree to any termination. Later in October of 1974, an involuntary petition in bankruptcy was filed against American Stores. In January of 1975, an agreement was reached between American Stores and a committee which represented the petitioning creditors [Creditors' Committee]. In January, 1975, the Creditors' Committee sent a letter to all of American Stores' creditors, summarizing the proposed agreement in addition to soli-

---

1. Plaintiffs are Ted H. Greene Co. and John K. Bestor, executor of the estate of Ted H. Greene. During the pendency of this litigation, Bestor was substituted as a party plaintiff under Rule 52.13.

2. In Count II, plaintiffs sought to impose American Stores' liability on American Stores' parent and sister corporations, American Investment Company (AIC) and Public Acceptance Company (PAC). In Count III, plaintiffs alleged their execution of the lease was fraudulently induced

by American Stores and AIC. In Count IV, plaintiffs alleged that American Stores, AIC and PAC conspired together to breach the lease. In Count V, plaintiffs alleged AIC breached a fiduciary duty AIC allegedly owed to plaintiffs, as creditors of American Stores.

3. The agreement releases PAC and its affiliated corporations in addition to releasing and discharging American Stores.

citing claims.[4] The bankruptcy court then dismissed the bankruptcy petition, after a hearing on a motion to withdraw the petition.

After plaintiffs filed a claim with the Creditors' Committee,[5] American Stores sent plaintiffs a cashier's check, issued on June 4, 1975, representing a 10% distribution of their filed claim. The cover letter mailed with the check again summarized the contents of the Creditors' Agreement and informed the recipient that the complete agreement could be inspected at American Stores' St. Louis office. The back of the cashier's check contained a restrictive legend which read:

> *Endorsement* In consideration of other creditors of American National Stores, Inc. (ANS) doing likewise, the payee of this check, *by endorsing negotiating or depositing this check,* does hereby agree with ANS that its lease with ANS covering the premises at 1375 Commerce Street, Roseville, Minnesota be and the same is hereby mutually terminated as of January 31, 1975 and the claim of the payee against ANS under said lease shall be in the amount of $67,453.83 and the payee further agrees to be bound by the provisions of a certain Agreement dated Jan. 31, 1975 between ANS, the Creditors' Committee of ANS selected at a meeting at High Point, N. Car. on October 31, 1974 and Public Acceptance Company as more fully described in the cover

letter dated May 23, 1975 enclosed with this check. (Emphasis added)

Plaintiffs did not endorse, negotiate or deposit the check. Neither did they return the check, nor did they communicate to American Stores that they would not accept the check. They simply held it. American Stores continued to send additional distribution checks to plaintiffs through 1976 and 1979. These checks contained no restrictive legends. Plaintiffs cashed these checks. In September, 1979, plaintiffs filed the present action, claiming the full amount due on the lease. At that point, American Stores stopped sending distribution checks to plaintiffs.

On appeal, plaintiffs raise 15 points and 14 subpoints. We address those issues which dispose of all of plaintiffs' points.

Plaintiffs contend that the trial court erred in finding an accord and satisfaction.[6] More specifically, plaintiffs contend (1) they did not accept American Stores offer of an accord, (2) if they did accept, the accord lacked consideration and (3) if there was acceptance and consideration, there was no satisfaction.

## Conflict of Laws

The parties raise and discuss the question of whether Missouri or Minnesota law should be used to resolve the issues raised by plaintiffs' contentions. We need not and do not address this choice of law issue. The applicable Missouri and Minnesota

---

**4.** The last portion of the Creditors' Committee letter reads:

> The Committee believes that it would be in the best interest of all creditors that the assets of ANS be liquidated and distributed in accordance with the settlement agreed to by and between the Creditors' Committee, ANS and Public.
>
> . . . .
>
> Therefore, the Creditors' Committee urges that all creditors refrain from taking any independent action. Within 30 days after dismissal of the bankruptcy petition, a further report will be sent by the Creditors' Committee, and it is anticipated that a first distribution will be made to creditors at that time. Please forward your claim together with invoices and/or statement of account attached to Leon C. Marcus, Esq. . . .

**5.** Plaintiffs' reply letter stated:

> As instructed in letter addressed to "All Creditors of American National Stores" dated January 31, 1975, I am enclosing my claim and statement of account for monies owed to me by American National Stores including unpaid rent through January 31, 1975.

**6.** At trial, plaintiffs objected to the introduction of evidence on the alleged accord, arguing that this defense was not properly pled. American Stores specifically and sufficiently pled the ultimate fact of accord and satisfaction; therefore, the objection was properly overruled. *See, e.g., Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976); *Friedman v. State Mutual Life Assur. Co.,* 108 S.W.2d 156, 160, 162 (Mo.App.1937).

laws are essentially the same on the issues raised, *see, e.g., Long v. Weiler,* 395 S.W.2d 234 (Mo.App.1965); *Don Kral Inc. v. Lindstrom,* 286 Minn. 37, 173 N.W.2d 921 (1970), except, perhaps, for the issue of consideration. *Compare Winter Wolff & Co. v. Co-op Lead & Chemical Co.,* 261 Minn. 199, 111 N.W.2d 461, 465–67 (1961) *with Ayers Plastics Co. v. Packaging Products,* 597 S.W.2d 177, 181 (Mo.App. 1979). We resolve the issue of consideration under Missouri law, which is more favorable to plaintiffs.

### *Acceptance*

■■■ An accord is an agreement for the settlement of some previously existing claim by a substituted performance. A. Corbin, *Contracts* §§ 1268, 1276, at 1025, 1041 (1952). The validity of such an agreement is dependent upon the same basic factors and principles that govern contracts generally. *Ayers Plastics Co. v. Packaging Products,* 597 S.W.2d 177, 182 (Mo. App.1979). Therefore, the words and acts of the parties are interpreted according to the objective theory of contracts.

■■■ As a general rule, silence or inaction cannot constitute acceptance of an offer. *Revere Copper & Brass, Inc. v. Manufacturers' Metals & Chemicals, Inc.,* 662 S.W.2d 866, 870 (Mo.App.1983). If the offeree has no duty to speak, his silence may not be translated into an acceptance merely because the offeror attaches that effect to it. *Id.* Silence and inaction simply evidence no intention of the offeree. This general rule does, however, have exceptions. *See* Restatement (Second) of Contracts § 69 (1981). In some jurisdictions, the courts find an acceptance when a creditor holds for an unreasonable length of time a debtor's cashier's check offered to settle a pre-existing debt. *See, e.g., Day-Luellwitz Lumber Co. v. Serrell,* 177 Ill. App. 30, 36–37 (1913); *Willis v. City National Bank,* 280 S.W. 270, 273–74 (Tex.

App.1925). *See also Restatement of Contracts* § 72(2) (1932). The precise rationale used by these courts for this holding is unclear. Their holding definitely is affected by the debtor's cashier's check being the equivalent of cash, *see, e.g., Day-Luellwitz, supra* at 37; *Willis, supra* at 273,[7] and may be based on the established doctrine of estoppel, *Willis, supra,* at 273, or on a nebulous public policy serving as a short cut to justice, *Day-Luellwitz, supra* at 37.

We need not, however, base our decision solely on the fact that plaintiffs unreasonably retained American Stores' cashier's check for eight years in silence. Plaintiffs did not simply retain this initial distribution check and do nothing more. Plaintiffs acted. As specifically found by the trial court, plaintiffs endorsed each of the subsequent distribution checks sent to them "with actual knowledge of the terms and conditions of the proposed agreement...." Moreover, the second check was not a cashier's check, but one of American Stores' own checks. Plaintiffs' cashing of this endorsed check which would be returned to American Stores strengthens the inference that plaintiffs' overt acts manifested acceptance.

Plaintiffs contend their evidence shows the first cashier's check was not signed because of its restrictive endorsement, and the subsequent checks were signed because they contained no such restriction. On review, this evidence is not meaningful. The trial court did not have to credit it. More important, plaintiffs' secret intentions are irrelevant under the objective theory of contracts.

Plaintiffs also contend American Stores failed to prove that plaintiffs did not communicate their rejection of the offer to American Stores, which, plaintiffs argue, was part of American Stores burden of proving the accord and satisfaction. We disagree.

---

**7.** In Missouri, as a general rule, payment cannot be stopped on a cashier's check. *See State ex rel. Chan Siew Lai v. Powell,* 536 S.W.2d 14, 16 (Mo. banc 1976). Apparently, payment of a cashier's check cannot be stopped even when legal proceedings have been initiated to enjoin payment. *Id.* at 16. *Contra, Brady on Bank Checks* § 20.12 (5th ed. 1979).

■ The burden of proving accord and satisfaction is simply the burden of proving a contract: offer, acceptance and consideration. *See, e.g., Long v. Weiler,* 395 S.W.2d 234, 237 (Mo.App.1965). American Stores is saddled with that burden, but, as is generally true, is not saddled with the burden of proving a negative—that plaintiffs did not communicate their rejection.

Plaintiffs also argue that their rejection was shown by a lease Termination Agreement the parties entered into a year after plaintiffs received the first cashier's check. The Termination Agreement was not inconsistent with the existence of the accord agreement since it left the parties' claims for amounts due on the lease in the same status as before its execution. This is reinforced by the fact that plaintiffs cashed four distribution checks after the date of the Termination Agreement.

■ Whether the trial court's finding of an acceptance is an ultimate fact, conclusion of law or mixed fact and law, we agree that plaintiffs' retention of the first cashier's check for eight years and plaintiffs' cashing of the subsequent checks constitute an acceptance.

*Consideration*

Plaintiffs contend the lease in question specifically defined the rent payments and the term of the lease. Therefore, plaintiffs argue, the money due them from American Stores for the breach of the lease is a liquidated debt. Further, plaintiffs contend, even if they did accept American Stores' offer, they merely accepted an amount less than owed on a liquidated debt, and, under Missouri law, a payment of an amount less than owed on a liquidated debt is insufficient consideration to settle that debt. Plaintiffs' argument is misdirected and, thus, misses the mark.

■ As a general principle, plaintiffs' argument correctly states Missouri law. *E.g., Friedman v. State Mutual Life Assur. Co.,* 108 S.W.2d 156, 163 (Mo.App. 1937). In Missouri, however, no different than other states, a benefit or detriment different from that involved in the creation of the debt is sufficient consideration to support an accord and satisfaction discharging that debt. *See, e.g., Alaska Federal Savings & Loan Ass'n v. Hoffman,* 485 S.W.2d 118, 123 (Mo.App.1972); *In re Mosbacher,* 31 S.W.2d 225, 226 (Mo.App. 1930). The accord here was, in effect, a composition agreement with creditors. The mutual promises between creditors to give up part of their individual claims constitutes sufficient consideration to sustain the agreement. *See, e.g., Hutcheson & Co. v. Providence-Washington Ins. Co.,* 341 S.W.2d 142, 146 (Mo.App.1960); *Hanson v. Crawford,* 130 Mo.App. 232, 109 S.W. 98, 99 (1908). Moreover, American Stores' foregoing of their privileges and rights under the bankruptcy law is a detriment to it and, thus, additional consideration. *See* A. Corbin, *Contracts* § 1283, at 1052 (1952).

*Satisfaction*

Plaintiffs contend an accord and satisfaction has two elements: (1) the accord or agreement and (2) the satisfaction or execution of the performance of the accord. Plaintiffs contend American Stores did not complete its payments as promised. Therefore, plaintiffs argue, there was no satisfaction. On the present record, plaintiffs' argument is misdirected and, understandably, misses the mark.

■ An accord and satisfaction does require both the accord and satisfaction. *E.g., Long v. Weiler,* 395 S.W.2d 234, 237 (Mo.App.1965); *Western Military Academy v. Viviano,* 235 Mo.App. 301, 133 S.W.2d 1098, 1102 (1939). An "accord executory," however, is an agreement for the future discharge of an existing claim by a substituted performance. A. Corbin, *Contracts* §§ 1268–1276, at 1025–42 (1952); Restatement of Contracts § 417 (1932); Restatement of (Second) Contracts § 281, comment a (1981). An enforceable accord executory suspends the original claim and, as long as the debtor has not breached the accord, the creditor is precluded from maintaining an action on the prior or original claim. Corbin, *Contracts* § 1274, at 1037–

39; Restatement of Contracts § 417(a) (1932); Restatement (Second) of Contracts § 281(2), comment b (1981).

Just as the trial court, we have found plaintiffs accepted American Stores' offer for sufficient consideration. Therefore, plaintiffs and American Stores entered into an accord executory. The trial court also found that pursuant to this accord, "[p]laintiffs [were] entitled to the 1980 distribution," but the court was "unable to determine whether any other distributions were due plaintiffs." Consequently, the trial court did not and, from the record, could not find that American Stores completed its promised performance. Therefore, the trial court could not find an accord *and satisfaction.* The court, in its findings and conclusions, does repeatedly refer to an "accord and satisfaction agreement." However, from the legal effect the court attributed to this agreement, it is quite clear the court actually found an accord executory.

■ We find American Stores' proof of an accord executory properly within its pleaded affirmative defense of accord and satisfaction. Moreover, we do not consider American Stores' discontinuance of the distribution payments after plaintiffs filed their action to be a breach by American Stores of the accord executory. Therefore, with a valid accord executory in existence, plaintiffs are precluded from bringing their claim for breach of the lease in Count I. *See* Corbin, *Contracts* § 1274, at 1037.

The trial court ordered the plaintiffs to specifically perform the "accord and satisfaction agreement." This relief is neither proper nor necessary.

American Stores did not request specific performance in their pleadings. They simply requested a dismissal of plaintiffs' claims. The trial court, however, relied on Rule 55.08 to justify its order of specific performance. Rule 55.08 does require the court to treat a counterclaim improperly designated as a defense as if it were properly designated. But, American Stores did not improperly designate their affirmative defense of accord and satisfaction. It is quite properly an affirmative defense. American Stores simply failed to request the additional relief of specific performance.

■ Admittedly, in equity under appropriate circumstances, a court may grant relief consistent with the pleadings even though the relief granted has not been specifically pleaded. *See, e.g., Cox v. Bryant,* 347 S.W.2d 861, 863 (Mo.1961). This Court action, however, is normally confined to suits in equity and should be granted only in unique circumstances. *Id.* at 863. The pleadings here simply join legal issues, and the court's grant of equitable relief does not convert the legal issues originally joined into equitable issues so as to justify the court's actions.

■ Moreover, the order of specific performance is not necessary. Admittedly if a creditor breaches an accord executory, a debtor may "maintain a suit for specific performance of the accord, in addition to any claim for damages...." Restatement (Second) of Contracts § 281(3) (1981). However, the debtor here, American Stores, has successfully sustained its pleaded affirmative defense—an accord. By this accord, American Stores is released from any and all claims of plaintiffs. The only acts plaintiffs could be required to specifically perform would be the cashing of the original cashier's check and any subsequent distribution checks due or which become due. This act of cashing is irrelevant and, thus, unnecessary to American Stores' defense. The trial court, and now this court, has found plaintiffs accepted the accord, and the appropriate relief for American Stores is the relief it prayed for in Count I and its other Counts—dismissal of plaintiffs' claims.

Accordingly, we amend the trial court's order by striking the relief of specific performance and adding, in lieu thereof, the dismissal of each of plaintiffs' Counts.

SMITH, P.J., and SNYDER, J., concur.