John M. KARSCH, Appellant,

v.

Robert L. CARR, et al., Respondents.

Nos. 57334, 57271.

Missouri Court of Appeals,
Eastern District.

Nov. 20, 1990.

Robin Edward Fulton, and Maurice B. Graham, Fredericktown, for appellant.

Nicholas G. Gasaway, Jr., Union, Daniel Cytron, Hillsboro, for respondents.

CRANDALL, Chief Judge.

Plaintiff, John M. Karsch (Karsch), brought a declaratory judgment action, seeking a determination that there was no enforceable contract between him and defendants, Robert L. Carr, et al. (Carr),[1] for the sale of certain real property. Carr filed a separate action for specific performance of the alleged contract. Upon motion, the trial court consolidated the actions and denominated Carr's action as a counterclaim. Karsch dismissed his petition for declaratory judgment and the case was heard on the counterclaim. Karsch appeals from the judgment, in a court-tried case, which granted specific performance in favor of Carr and which awarded nine per-

cent interest on the past due money owed Carr pursuant to the contract. Carr cross-appeals from the trial court's denial of his motion to amend the judgment regarding prejudgment interest. We reverse the judgment in favor of Carr and deny Carr's cross-appeal as moot.

The evidence, viewed in the light most favorable to the prevailing party, established that, beginning in the spring of 1987, Karsch informed Carr that he was interested in buying the property in question which consisted of approximately 1364 acres in Washington County. At that time, Karsch viewed the land and Karsch told Carr that he was interested in constructing a large lake on the property. Carr gave Karsch a key to the entrance to the property so that he could inspect it whenever he wished.

Thereafter, Carr and Karsch continued negotiations toward the purchase of the property. In December 1987, Carr mailed a draft form of an agreement for the sale of the real estate to Karsch. The proposed contract recited a purchase price of $340,-000 and named the grantees as John Karsch and his wife or any corporate name to be used. Neither party signed the draft form of the contract.

On January 8, 1988, Karsch told Carr that he was willing to pay $240,000 for the property. Carr rejected that offer. The next day, January 9, Karsch offered to pay $265,200 for the property and showed Carr the following handwritten memorandum of terms that he had prepared:

---

**1.** For the sake of clarity, we use the name of only one seller, Robert Carr, throughout this opinion. Karsch dealt only with Carr who was acting on behalf of himself, his two sisters, and all of their respective spouses in procuring the sale of the real estate in question. Carr also was the only seller who presented any evidence in the case below. It is undisputed that at all times pertinent hereto Carr was acting as agent for the other sellers.

In addition, Karsch showed Carr a check in the amount of $5,000 signed by him and made payable to "Robert Carr," with the notation "Partial Down Pmt. [payment] on 1360 Acres." After some discussion, no agreement was reached; but Carr told Karsch that he would confer with the other sellers and inform Karsch of their decision. The memorandum and check remained in Karsch's possession.

On January 14, 1988, Carr informed Karsch that sellers were willing to sell the property to him for $265,200. That same date, Carr received from Karsch the original memorandum prepared by Karsch as well as the $5,000 check. Sometime thereafter but before February 3, 1988, Karsch informed Carr that the grantee in the deed of conveyance should be designated as "John M. Karsch."

On February 3, 1988, Carr personally delivered the following items to Karsch in an envelope: a general warranty deed for the property signed by all the sellers; the promissory note; the deed of trust; the title insurance commitment; and Karsch's original memorandum of terms. The grantee on the general warranty deed was designated as "John M. Karsch." The promissory note and deed of trust were prepared for the signatures of both Karsch and his wife. The promissory note provided for a variable rate of interest as follows:

[I]nterest at the rate of Ten (10%) percent per annum until February 15, 1990, and thereafter the interest rate shall be the higher of Ten (10%) percent per annum or Two (2%) percent less than is then being charged on real estate loans by Washington County Mercantile Bank of Potosi, Missouri, at the option of the holder(s) of this note, reviewable annually on February 15....

A letter of transmittal was affixed to the outside of the envelope. Karsch kept the documents, expressing no dissatisfaction with any of them.

On February 10, 1988, Karsch hired a land surveyor and engineer, who specialized in lake developments, to make a visual inspection of the property to determine if the land was suitable for a 100 acre lake. The engineer concluded that it was not "economically practical" to build a lake of that size on the property.

On February 17, 1988, Karsch informed Carr that he did not intend to purchase the property. He cited as his reason the fact

that he would not be able to construct a lake as large as he wanted on the property. Carr, however, refused to release Karsch from the alleged contract. Karsch returned the documents relative to the property to Carr and filed a declaratory judgment action against Carr and the other sellers to determine if there was an enforceable contract. Carr sought specific performance, claiming that he had fully performed under the contract by delivering the executed deed. The trial court, after a bench-tried case, granted specific performance in favor of Carr and awarded Carr nine percent interest on the past due money.

■ The salient issue in the present case is whether Karsch and Carr entered into a contract for the sale of the property. Carr has the burden of proving that the agreement was enforceable. *See Koch–Laumand Contracting, Inc. v. May Dept. Stores Co.*, 623 S.W.2d 52, 55 (Mo.App. 1981). It is axiomatic that, in order for a contract to be formed, there must be "meeting of the minds" and the essential terms must be certain. *Frensley v. Mills*, 746 S.W.2d 427, 428 (Mo.App.1988). To determine whether a meeting of the minds has occurred and an agreement has been reached, the court looks to the intention of the parties as expressed or manifested in their words or acts. *Id.*

■ On initial examination, it would appear that a contract might have been formed between Karsch and Carr on January 14, 1988. That conclusion, however, is at war with Carr's theory of the case. Carr argues that he entered into a contract on January 14 with Karsch and his wife as the buyers of the property and himself as the seller. He contends that Karsch was acting as the agent for his wife with regard to the sale of the land and that, therefore, wife was a party to the alleged contract.

There is no substantial evidence in the record to support Carr's theory. Carr's taking the memorandum and check on January 14 did not indicate that the parties had reached a final agreement, but was merely indicative of further negotiations between them. The negotiations continued until February 3, 1988, when Carr attempted to complete the contract, as he viewed it, by adding Karsch's wife to the contract and by using a different method of computing the interest on the note. Whether we characterize Carr's actions on February 3 as an offer or a counteroffer is not determinative of the issues in this case under Carr's theory. The record shows that negotiations between Karsch and Carr had taken place solely between them and had been on-going since the spring of 1987. On February 3, Carr's injection of new terms into the agreement, which were at variance with Karsch's memorandum on January 14, was a clear signal that on January 14 the parties had not agreed to all of the essential terms of the contract for the sale of land. As a matter of evidence, Carr failed to prove that there was a "meeting of the minds" and that all the essential terms were certain on January 14, such that a contract was formed on that date.

■ Karsch's actions in taking the documents without objection and retaining them from February 3 until February 17 did not evince an acceptance of Carr's proposed terms of the contract. As a general rule, silence or inaction cannot constitute acceptance of an offer. *Bestor v. American Nat. Stores, Inc.*, 691 S.W.2d 384, 388 (Mo.App.1985). If the offeree has no duty to speak, his silence may not be translated into an acceptance merely because the offeror attaches that effect to it. *Id.*

No evidence was introduced that Karsch communicated any acceptance of the terms that were at variance with the handwritten memorandum and with his oral instructions. In fact, within two weeks of receiving the documents, Karsch clearly rejected Carr's offer. Karsch's acts did not manifest an acceptance. *Compare Bestor*, 691 S.W.2d at 388–389 (lessors' retention of lessee's cashier's check for eight years and their cashing of subsequent checks constituted acceptance).

■ Carr's claim that his delivery of the executed deed and other documents on February 3 constituted full performance

under the contract and took the contract out of the statute of frauds was also not supported by the evidence. The concept of full performance arises when there is a contract which does not satisfy the writing requirement of the statute of frauds, but which is recognized as valid because one party has fully performed under the terms of the contract. *See, e.g., Conway v. Judd,* 723 S.W.2d 905, 907 (Mo.App.1987). The facts of this case do not justify the application of the doctrine of full performance. Here, there was no contract, oral or written, under which Carr could fully perform. Carr's delivery of the executed deed and other documents when the parties were still in the process of negotiating the essential terms of the contract could not operate to transform mere negotiations between the parties into an enforceable agreement.

In addition, we note that Carr brought this action against Karsch for specific performance, not for damages for breach of contract. Karsch was the only named party to the litigation. Karsch's wife was not named as a party. It is elementary that all parties to the contract must be parties to the litigation in order for a judgment in specific performance to lie. Carr's failure to name Karsch's wife as a party to the action further defeats his theory of the case that both she and Karsch were parties to the contract with him. *Compare Conway,* 723 S.W.2d at 907 (wife named as party to breach of contract action, although husband denied agency relationship between wife and himself with regard to the real estate contract).

The judgment of the trial court in favor of Carr is reversed. Carr's cross-appeal for an increase in prejudgment interest is rendered moot. In view of our holding, we need not address the other points raised in Karsch's appeal.

KAROHL and CRANE, JJ., concur.